CROOKS, Collector of Internal Revenue, v. KANSAS CITY HAY DEALERS' ASS'N.

Circuit Court of Appeals, Eighth Circuit.
December 16, 1929.

No. 8595.

William L. Vandeventer, U. S. Atty., and Harry L. Thomas, Asst. U. S. Atty., both of Kansas City, Mo., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Lester L. Gibson, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for appellant.

Henry N. Ess, I. N. Watson, John B. Gage, and R. E. Watson, all of Kansas City, Mo., for appellees.

Before KENYON and BOOTH, Circuit Judges, and REEVES, District Judge.

KENYON, Circuit Judge. Appellee brought suit to recover against appellant, as collector of internal revenue, a certain income tax in the sum of $151.43 claimed to have been illegally collected for the year 1924, and for which refund had been refused by the Commissioner of Internal Revenue. A jury was waived, and the trial court found in favor of appellee, rendering judgment for the amount of the claim.

Appellee is a voluntary association composed of 50 to 60 men who are individually engaged in the business, as brokers or commission merchants, of buying and selling hay and straw on the Kansas City market. It has a constitution and by-laws fixing rights and obligations, and prescribing rules to be followed by the members. It has no capital stock and no shareholders. None of the officers, except the secretary and assistant, receive salaries. The association does not operate any business, but it employs men to inspect, weigh, plug, and watch cars of hay and straw which are bought, sold, or consigned by or to members of the association. Fees are exacted from the shippers for these services and used for the purpose of paying employees. Some years these fees cover the operating expenses, and other years they do not. The constitution and by-laws provide for certain assessments to be made on the members to further the interests of the association. One assessment of $10 per year is to be used in entertainments and the promotion of good fellowship, and there are provisions for fines for various offenses against the rules. There is a membership transfer fee of $50, and originally there was a $5,000 membership fee. The moneys collected by the association are used in furtherance of its purposes, and no part of the same has ever been distributed to any member, and, according to the agreed statement of facts, no part thereof can inure to the benefit of any member. There are no other associations in Kansas City furnishing similar service, so this association does not compete with any business.

Was this association exempt from income tax by virtue of subsection 7 of section 231 of the Revenue Act of 1924 (26 USCA § 982), which exempts from such taxation "business leagues, chambers of commerce, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual"?

It is apparent that, to come within the terms of said statute, appellee must be (1) a business league, chamber of commerce, or board of trade; (2) not organized for profit; and (3) that no part of the net earnings inure to the benefit of any private shareholder or individual.

Appellant contends that appellee is a sort of guild or brotherhood existing entirely for the benefit of its membership and in no way for the benefit of the public, and that Congress intended to exempt only such organizations as were devoted entirely to the general public welfare. Congress did not so say. However, this organization does contribute to the welfare of Kansas City, as the testimony shows that its practices have given such integrity to the hay market there as to make Kansas City the leading hay market of the world.

The object of appellee, as stated in its constitution, is as follows:

"II. * * * To maintain a Hay Association to promote uniformity in the customs and usages of merchants; to inculcate principles of justice and equity in business; to facilitate the speedy adjustment of business disputes; to inspire confidence in the business methods and integrity of the parties hereto; to collect and disseminate valuable

commercial and economic information, and generally to secure to its members the benefits of cooperation in the furtherance of their legitimate pursuits and to promote the general welfare of Kansas City."

The association cannot properly be termed a chamber of commerce, which is generally understood to be "a society of the principal merchants and traders of a city who meet to promote the general trade and commerce of the place." 11 C. J. p. 228.

We are not impressed with the argument that appellee association could not be a board of trade because its members are engaged in the same line of business. It is a matter of common knowledge that many boards of trade consist of those who are engaged in similar lines of business; seeking to maintain higher standards of business ethics; and to facilitate buying and selling in their own lines. We see no reason why this association may not come within the term "Board of Trade," which is defined in Webster's New International Dictionary as "a body of men appointed for the advancement and protection of business interests." However, if there be doubt as to that, it certainly is embraced within the term "business league" as used in the statute. Article 518 of Treasury Regulation 45, made and promulgated pursuant to the Revenue Act of 1918, § 1309 (26 USCA § 1245), attempts to define a business league as "an association of persons having some common business interest, which limits its activities to work for such common interest and does not engage in a regular business of a kind ordinarily carried on for profit." The entire definition is too extended to set out, but would seem to cover such an association as is under consideration. "Business" is defined in Black's Law Dictionary as follows: " 'Business' is a very comprehensive term and embraces everything about which a person can be employed," which definition is approved by the Supreme Court in Flint v. Stone Tracy Co., 220 U. S. 107, 171, 31 S. Ct. 342, 357, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. "League" is defined in Webster's New International Dictionary as "an agreement or covenant between two or more nations, parties, or persons, for the accomplishment of some purpose by their cooperation." Combining the two definitions of business and league, we can very appropriately say that such a combined definition covers fully the purposes and objects of appellee association, which apparently is a sort of clearing house of information and for assisting those engaged in the hay business in Kansas City; carrying on its work under certain rules and regulations prescribed by the constitution and by-laws. It is an association that is helpful undoubtedly to the members individually, but which is likewise an aid to commerce, and conduces to the general welfare by establishing an honest market for the buying and selling of hay and straw and by assisting in preserving its integrity.

■ Was the association organized for profit? The by-laws provide certain charges for specific services to be performed for the members, such as weighing, plugging, and watching cars of hay. Provision is made for the sale of loose hay that may be on the tracks. All of these collections go into a general fund. Out of these things, including assessments of some fines, the association in 1924 had a net profit of $3,211.48, which included an item of interest from bank deposits, and an invested return surplus of some $1,000, which it had at that date accumulated. Upon these facts appellant builds its argument that the association was organized for profit.

It is unquestioned that the fees received for weighing, plugging, and watching services have in some years produced a profit to the association, while in other years there has been a deficit. It is the contention of appellee that these charges are merely incidental to the main purpose of the association; that honest weights, honest inspection, and fair dealing are essential to the maintenance of a reliable market. The mere fact that an association of this character may receive some income and arrange that income so as to carry on its work is no proof that it is organized for the sake of profit. Most of the colleges, churches, scientific and charitable institutions charge fees for certain services, but it cannot be argued therefrom that they are incorporated for the purposes of profit.

In speaking of the exemption arising under subdivision 6 of section 231 of the Revenue Act of 1924 (26 USCA § 982(6), the Supreme Court in Trinidad v. Sagrada Orden, 263 U. S. 578, 581, 44 S. Ct. 204, 205, 68 L. Ed. 458, said, "Evidently the exemption is made in recognition of the benefit which the public derives from corporate activities of the class named, and is intended to aid them when not conducted for private gain. Such activities cannot be carried on without money; and it is common knowledge that they are largely carried on with income received from properties dedicated to their pursuit. This is particularly true of many charitable, scientific and educational corporations and is

measurably true of some religious corporations. Making such properties productive to the end that the income may be thus used does not alter or enlarge the purposes for which the corporation is created and conducted." The limited trade in that case was considered as purely incidental to pursuit of the general purposes of religion, charity, and education, but financial gain was not the end to which these purposes were directed, and the court emphasizes the fact that the sellings were not to the public or in competition with others.

In Appeal of Waynesboro Manufacturer's Association, 1 B. T. A. 911, it appeared that the corporation might acquire a working capital of $25,000, but that was not its purpose. The board said such capital is "only for the purpose of enabling it to fulfill its nonprofit functions." It was held the taxpayer was a business league. See, also, Northwestern University v. Illinois ex rel. Miller, 99 U. S. 309, 25 L. Ed. 387.

Unity School of Christianity, 4 B. T. A. 61, would seem to be an authority in favor of appellee's position here. It was held that the financial activities of petitioner were merely incidental to the main purpose, and that the earnings of the school were really devoted to carrying out the altruistic purposes of its organizers.

Appellant cites Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460; Commercial Travelers' Life & Accident Association v. Rodway (D. C.) 235 F. 370, and Boston Terminal Co. v. Gill (C. C. A.) 246 F. 664. In the first case there was no question that the corporation was organized and conducted for profit; the second does not seem to be at all in point. In the third the corporation was one clearly organized for profit.

The agreed statement of facts recites:

"In some years it has been the experience of the Association that the fees realized from these services exceeded the cost of the services and the surplus over and above the amount actually expended to maintain the services went into the general fund of the Association and was used wholly in furtherance of the objects and purposes thereof and no part of said fund has or can inure to the benefit of any member of the Association or any other individual but such fund must be used solely and exclusively in furtherance of the objects of the Association in accordance with its constitution, by-laws, rules and regulations."

It appears, therefore, that all proceeds from the services performed for the members are merely incidental to the purposes of the association, and are to be used entirely in furthering its purpose.

We have examined the constitution, by-laws, and regulations of appellee association, and we think nothing can be found therein to substantiate any theory that this association was organized or conducted for profit. It is straining very hard at a gnat to claim this association is one organized for profit.

■ Do the net earnings of the association inure to the benefit of the individual members? Appellant does not contend that there are any shareholders or that any dividends have ever been declared, but asserts the real and controlling test is the ultimate destination of the property acquired and profits accumulated; that, if on the final dissolution of the association accumulated profits would go to the individual members, then the association does not come under the exemption of the statute. This argument is based on the assumption that the association is one having property, and that there would be some accumulated surplus if the association should dissolve. There is nothing in the record to show that the association had any property except what might be necessary to equip its office and an investment in weighing scales. True, there was profit for the year 1924. There is value, of course, to the memberships. While the memberships are property, they are incumbered with all the conditions and limitations found in the constitution and by-laws. Appellant argues that the by-laws show it was intended that members should have a property interest. Section 11 of the by-laws does refer to the interest in the property of a member now or at any time hereafter belonging to, or held for, the association. That language gives some basis to appellant's theory, but other parts of the by-laws referring to privileges and property interests follow the same with the expression "if any." We do not think that the one statement in the by-laws which would seem to infer that the members had some property interest, in view of other by-laws, and the conceded purposes and objects of the association, is sufficient to show that there were certain property interests that would vest in the members upon dissolution of the association. These provisions apparently refer to an expelled member, and the forfeiture of his membership.

Hyde v. Woods, 94 U. S. 523, 24 L. Ed. 264, and Sparhawk v. Yerkes, 142 U. S. 1, 12 S. Ct. 104, 35 L. Ed. 915, hold that members of such an association as this have merely a qualified right in memberships or the proper-

ties of the association. Appellant largely relies on Kemper Military School v. Crutchley (D. C.) 274 F. 125, as sustaining the theory of ultimate destination as the proper test. The corporation there, however, while carrying on a school devoted to educational purposes, was doing the same for private pecuniary profit, and had paid dividends of 6 per cent. on all the stock since its organization. Uniform Printing & Supply Co. v. Commissioner of Internal Revenue (C. C. A.) 33 F. (2d) 445, also relied on, presents a very different situation. The company was printing for insurance companies. It was a mutual arrangement to start with. The association had a plant, and was doing the printing originally at cost. This plan was changed, and it was paid more than the actual cost of printing, whereby it accumulated a substantial surplus of nearly $75,000 for 1918. It expended money for replacements and additions to its plant. It was held that its property could be sold at any time and the proceeds divided among its stockholders; that the value of the property had been increased to the extent of profits earned during the year. This case is so different from the one at bar as to be of little help. The large membership fee of $5,000 would seem to substantiate in a way the theory that the members might get something in case of the dissolution of the association, and that a rather large program of operation was in contemplation; however, the statement of facts contains this: "All moneys of the Association must be expended wholly and exclusively in furtherance of the interests of the Association, and no part of the income of the Association inures to the benefit of any member or individual." We think there is no need of discussing just the kind of interest that the members may have had in the property of the association if it should have any property at the time of a future dissolution. Certainly any interest was limited by the rules and conditions of the by-laws and constitution. In the appeal of Waynesboro Manufacturer's Association, supra, the Board of Tax Appeals held that whether any part of the earnings inured to the benefit of private individuals was a question of fact to be determined on the evidence. The trial court has found by its decision that any profits do not inure to the benefit of individuals.

Mr. Campbell, former president of the association, testified that all the money collected went into a general fund, and was used in paying the current expenses, and for no other purpose; that it was used in furtherance of the purpose of the association, and no part of it ever distributed to any member. The constitution and by-laws make no provision for distribution of any moneys of the association to its members, either during the life of the association or upon its dissolution. If there is ever a dissolution, and any distribution is made to the members of any surplus, the government can protect itself as to taxes at that time. The trial court, in passing on this question, said: "Conceivably on the final dissolution of the Association there might be a division of any surplus then existing among its members and in that way its earnings might inure to the benefit of individuals. If the Association were organized for profit that ultimate possible division of a surplus might be sufficient to justify the exclusion of the Association from the exempted class. Such a remote contingency, however, in my judgment, with an association not organized for profit, was not intended to destroy the privilege of exemption."

With the admissions in the agreed statement of facts that none of the income of the association inures to the benefit of any member thereof, we do not think that some hazy, indefinite theory of how a member of the association might eventually receive something in case of its dissolution should be permitted to defeat the intention of Congress to exempt associations of this character from income taxes. If this association were in any way a scheme to avoid federal taxes, a different question would be presented. No such claim is made. The good faith and honesty of purpose of the association is not challenged.

In our opinion, the decision of the trial court was correct, and it is affirmed.