## RETAIL CREDIT ASS'N OF MINNEAPOLIS v. UNITED STATES.
### No. 3805.

District Court, D. Minnesota,
Fourth Division.
June 30, 1938.

Alfred W. Bowen, of Minneapolis, Minn., for plaintiff.

Victor E. Anderson, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., for the United States.

JOYCE, District Judge.

This case is a suit for refund of Federal corporate income taxes, excess profits taxes and penalties in the sum of $306.11 paid by the plaintiff, Retail Credit Association of Minneapolis, for the years of 1933 to 1936, inclusive. The claim is based upon the assertion that the taxpayer is a "Business League" and therefore, under the provisions of Section 101(7) of the Revenue Act of 1934 as amended, 26 U.S.C.A. § 103(7), exempt from such taxes. The parties waived a jury and the cause was submitted to the court on the 24th day of March, 1938, briefs of the respective parties being thereafter filed.

Plaintiff is a corporation organized and existing under and by reason of the laws of the State of Minnesota, with its principal place of business in the City of Minneapolis. Plaintiff was organized in the year 1925 as a non-profit organization and has no capital stock and no stockholders. Its Articles of Incorporation appear in full in Exhibit 1,[1] hereby made a part of these Find-

---

[1] Exhibit 1.

Articles of Incorporation of Retail Credit Association of Minneapolis, a corporation.

The undersigned, H. A. Marsh, Fred A. Thompson, Hilda Knorr and S. L. Gilfillan propose to and hereby do, form a Corporation, not for profit, under and by virtue of Sections 7892 to 7898 of the Revised Statutes of Minnesota for the year 1925 and for such purpose hereby certify and state:

I

(a) The name of such Corporation is Retail Credit Association of Minneapolis:

(b) The purpose for which it is formed is (1) to bring its members into closer relationship for the purpose of the interchange of ideas, methods and information, and the rendering of mutual assistance; (2) to concentrate effort and thereby have at our command a more powerful influence in matters of legislation and law enforcement; and (3) to disseminate at regular intervals literature bearing on retail credits:

(c) These objects shall be carried out by regular meetings of the Corporation and through meetings of various groups of members engaged in the same or similar lines of business and through publications and literature issued by the Corporation.

The principal place of business of this Corporation shall be at Minneapolis, Minnesota.

II

Membership

(a) Persons eligible to membership in this Corporation are representatives of individuals, co-partnerships or corporations, in good standing, selling at retail on a credit basis, and also representatives of banks or insurance companies in good standing; also the representatives of any other business not heretofore mentioned, the eligibility of this latter class being subject to a favorable vote of two-thirds of the directors of the Corporation; there is no initiation fee.

(b) The dues of regular members are Twenty and no/100 dollars per year and of associate members Seven and 50/100 dollars per year payable annually in advance.

III

There shall be no Capital Stock.

IV

(a) The officers of the corporation are:
H. A. Marsh, President,
Fred A. Thompson, Vice President,
Hilda Knorr, Treasurer,
S. L. Gilfillan, Secretary.

(b) They shall be elected by the members at the annual meeting of the Corporation held in the City of Minneapolis, Minnesota on the second Wednesday of September of each year commencing in the year 1926.

(c) The Board of Directors which shall conduct the business of the Corporation are the President, Vice President, Treasurer, Secretary and six (6) members of the Corporation chosen from the membership at the annual meeting. Three Directors shall be elected in the year 1926 and three in the year 1927, each for a term of two years.

Witness our hands and seals this 30th day of November, 1925.

H. A. Marsh [Seal.]
Fred A. Thompson [Seal.]
Hilda Knorr [Seal.]
S. L. Gilfillan [Seal.]

State of Minnesota }
County of Hennepin } ss.

On this 30th day of November, 1925, before me a Notary Public in and for said County and State, personally appeared H. A. Marsh, Fred A. Thompson, Hilda Knorr and S. L. Gilfillan known to me to be the persons whose names are subscribed to the foregoing instrument and acknowledged to me that they executed the same.

Witness my hand and Notarial Seal the day and year last above written.

M. C. Badger

ings of Fact. It has by-laws, but they are not pertinent to this hearing.

· The corporate officers consist of a President, Vice-President, Treasurer and Secretary who are elected each year by the members. The corporation has ten Directors who are elected for a period of three years, the tenth Director being the past President for the preceding year, who serves for one year as an ex-officio member. Various committees are formed and chairmen appointed in charge of such committees to formulate policies and to carry on the activities of the association. These committees are as follows: Budget, Community Credit Policy, Conference and National Affairs, Credit Ledger (local monthly publication to members), Delinquent Lists, Educational, Entertainment, Group Luncheons, Inter-City Relations, Legislative, Membership, Pay Promptly Campaign, Program, Publicity, Return Goods, Sports and Recreation, and Welcoming. All of the foregoing officers and members of the foregoing committees, who handle all affairs of the plaintiff, serve without salaries.

The plaintiff occupies offices with the Retail Credit Exchange, a separate and distinct corporation which will be mentioned below, and the clerical work of the plaintiff is done by employees of the Retail Credit Exchange for which work a charge of about $25 per month is made.

The members of the organization are those who are in business in the City of Minneapolis or employees of business organizations, who or which extend credit to the buying public, such as department stores, furniture stores and like mercantile businesses. The corporation does not have stock but issues memberships, the annual dues to each regular member being twenty dollars, and to associate members being Seven dollars and 5%/100, which entitles members to membership in the National Retail Credit Association of St. Louis, Missouri, from which the members receive a national credit periodical published by the National Credit Association. There are about 250 members of the plaintiff organization.

From copies of income tax returns filed with the Internal Revenue Bureau, and produced at the trial, it was shown that until the year 1933 the statutory income of plaintiff has been less than the minimum upon which corporations organized for profit have been taxed under Federal income tax laws. For the years 1932 to 1936, inclusive, the total net income was $1,528.80, or an average per year of $382.20. A balance sheet and financial statement of the plaintiff for the years involved are in the record as Exhibits B–1 and B–2, attached to the complaint, and are hereby made a part of these Findings of Fact.

The principal source of plaintiff's funds is membership dues. There is also an annual income on 15 shares of the capital stock of the Minneapolis Credit Exchange, and interest on current bank balance, which for the taxable year of 1936, which is representative of all other years involved, amounted to $7.50 and $81.27, respectively. At the end of any given calendar year the plaintiff may appear to have net income, but the same is, in fact, a temporary surplus representing the overlapping of collections and disbursements between fiscal periods and is made up of unexpended contributions for special purposes, such as courses of instructions and newspaper advertising campaigns. The taxpayer owns no property except a small amount of office furniture.

The disbursements, which ordinarily equal the funds derived from all sources, are entirely for the corporate objects. There is no capital stock, and no dividends. Disbursements are made for office rent, dues to the national association, monthly luncheons for members, stationery and postage.

The objects and activities of the plaintiff are chiefly educational. It seeks to promote the common interests of retail merchants extending credit in the Minneapolis area, to improve business conditions, to educate the public in the value and advantage of credit accounts and to promote the greater use of such credit by educating the public in prompt payment of bills and in minimizing the return of purchases, commonly called the "return goods evil". In this manner, the plaintiff seeks to make credit more easily and more economically available to the purchaser and to minimize costs. The education program is extended, at cost and without profit to the plaintiff, by special courses of instruction to groups of employees of members, such as sales force, accountants and credit department personnel. These courses are designed to assist in standardizing and improving retail merchants services, better business methods and practices. The public is reached generally through newspaper advertising, circulars and special courses for high school children, and University extension which courses are provided in cooperation with public school authorities.

The plaintiff produced in evidence a record book containing advertising in local newspapers over a period of years from 1928 to date. This advertising shows activities of the plaintiff designed to educate the general public to cooperation with the Federal government, with the local Community Fund, and with local efforts to improve the City of Minneapolis; also to convey information relative to the care and use of commercial fabrics and articles of clothing sold by Minneapolis stores; also advising people to pay promptly their doctor and dentist bills; and telling of the advantages of credit accounts, prompt payment of bills, and minimizing the "return goods evil".

The expense of such activities as the "Return Goods Campaign" and the "Pay promptly campaign", conducted largely through newspaper advertising, circulars, etc., is estimated in advance by the Budget Committee, which calls for contributions from the members to meet such expense. The contribution which is voluntary is based upon the ability to pay, the larger business organizations paying more than the smaller ones.

Once each month, the members may send to the Delinquent List Committee of the plaintiff a list of their customers who have not paid promptly their accounts. This list does not bear the name of the member, but carries a code number identifying the member. The list contains the names and addresses of delinquent customers but does not state the amount of the overdue bill. The same list with the same information may be sent by the member directly to the Minneapolis Credit Exchange, and if sent to the plaintiff for the purpose hereinafter stated, is by it turned over to the Minneapolis Credit Exchange.

The Minneapolis Credit Exchange is a regular business organization, organized and conducted for profit. It has 2,800 shares of outstanding capital stock, of which the plaintiff owns 15. The Credit Exchange has 1,400 members. All of the 250 members of the plaintiff are members of the Credit Exchange, but not all of the members of the latter are members of the plaintiff. The chief business of the Credit Exchange is the compilation, publication and distribution to its members only, of a credit rating book known as the "Yellow Book", which is used by all members in their credit business. The book is not for sale; it goes only to the 1,400 members as an incident to their membership, and is published annually. The information is obtained chiefly from its members, either directly or through the plaintiff so far as its 250 members may send their monthly lists to it as above stated. The Credit Exchange performs other commercial services and pays the usual taxes on business corporations.

When the Delinquent List Committee of plaintiff gets the lists of delinquent customers from their 250 members, it compiles the names into a single list and then turns the individual lists over to the Credit Exchange. The Committee sends a form letter containing matter of much the same nature as is carried in the large full-page newspaper advertisements relative to the value of good credit ratings, prompt payment, etc. The form letter does not contain the name of the member store or business and does not contain any statement of the amount of the account overdue. No follow-up letter is sent to such customers by the Committee or by the plaintiff. There is no further communication with such customers unless their names appear on subsequent monthly lists received from members, when they would receive another form letter of the same kind. The plaintiff makes no effort whatever to collect accounts either for its members or for others.

The foregoing activities embrace substantially all of the services rendered by the plaintiff, either to its members or to others. Plaintiff is not authorized to do and does not do any of the following things for members or others; make collections; make or sell credit reports and ratings; render any services in connection with litigation; act as receiver or trustee in commercial receiverships or insolvency proceedings; supervise or conduct audits of member books; make or hold investments for profit; charge fees for any services rendered by it.

Plaintiff filed no income tax returns for the periods involved until advised to do so by the Treasury Department as the court hereinafter finds.

Thereafter and on or about November 12, 1935, plaintiff filed with the Commissioner of Internal Revenue a claim for exemption from income taxes, contending it was a "Business League" and as such exempt from such taxes under the provisions of Section 101(7) of the Revenue Act of 1934, and Section 103(7) of the Revenue Act of 1932, 26 U.S.C.A. § 103(7).

On May 2, 1936, the Commissioner of Internal Revenue denied the plaintiff's application for exemption from income taxes.

Thereafter and on June 13, 1936, plaintiff paid to the then Collector of Internal Revenue for the District of Minnesota, who is not now in office, the sum of $221.65 as and for income taxes for the years ending August 31, 1933, 1934 and 1935, in the respective sums of $81.09, $16.57 and $87.58, and excess profits taxes for the latter two years in the respective sums of $6.03 and $30.38. On June 26, 1936, the sum of $28.76 was so paid as and for interest for the respective years of 1933, 1934 and 1935, in the respective sums of $21.34, $3.23 and $4.19, and on November 12, 1936, paid to said Collector the sum of $55.70 as and for penalty for the respective years 1933, 1934 and 1935, in the respective sums of $20.37, $5.68 and $29.65. That the total of all sums paid as aforesaid is $306.11.

The Collector of Internal Revenue, James R. Landy, to whom all said payments were made, is not now in office, nor was he in office when this action was commenced.

On September 1, 1936, plaintiff filed its claim for refund of the taxes so paid, which claim was denied on May 20, 1937.

This action was commenced on August 7, 1937, which was timely.

The record in this case develops that plaintiff organization was organized to and does promote the common interests of retail merchants in Minneapolis who extend credit to their customers, as well as to benefit the community at large. There is neither stock nor stockholders. There are no profits for distribution and no salaries for services. While benefits accrue to retail merchants on account of the activities of the plaintiff, they accrue because of plaintiff's efforts to educate the buying public in an appreciation of the advantages of credit and in the tenets of plain honesty in the payment of bills, as well as the avoidance of petty and nuisance practices such as are suggested by the "Return Goods Evil".

Plaintiff's affairs are handled by committees from the membership and its officers, none of whom draw salaries. Funds come from membership dues. These dues pay the expenses of the enterprise and no corporate authority exists for engaging in any business ordinarily conducted for a profit. The educational features referred to are carried out by courses of instruction to various groups of member's employees who are taught (1) to inaugurate and maintain better methods of service and practice, and (2) to reach the buying public through newspaper advertising and circulars and by instructing the children in the schools through courses arranged with school authorities.

The record, I believe, supports the conclusion that the plaintiff is the type of organization organized for the character of activity which renders it exempt as a "business league" within the meaning of Section 101(7) of the Revenue Act of 1934, 26 U.S. C.A. § 103(7). See Crooks v. Kansas City Hay Dealers' Ass'n, 8 Cir., 37 F.2d 83.

The court has jurisdiction of the proceedings and the whole thereof.

Plaintiff is not engaged in any business of a kind ordinarily carried on for profit; no profits inure to the benefit of any private individual or member of the plaintiff and that plaintiff is therefore a "business league" within the provisions of Section 103(7) of the Revenue Act of 1932, Section 101(7) of the Revenue Act of 1934, and Regulations 86 applicable to the latter Act.

Taxes collected of plaintiff for the years 1933, 1934 and 1935 were erroneously and unlawfully assessed, imposed and collected from the plaintiff.

Plaintiff is entitled to judgment against the defendant for the sum of Three Hundred Six and 11/100 Dollars ($306.11) with interest thereon according to law as follows: On the sum of $221.65 from June 13, 1936; on the sum of $28.76 from June 26, 1936; and on the sum of $55.70 from November 12, 1936; together with its costs and disbursements in this action.

Defendant's motion for judgment should be and is overruled.

The defendant is allowed exceptions to all adverse rulings.

Let judgment be entered accordingly.