## COMMISSIONER OF INTERNAL REVENUE v. CHICAGO GRAPHIC ARTS FEDERATION, Inc.

### No. 7859.

Circuit Court of Appeals, Seventh Circuit.

May 23, 1942.

J. P. Wenchel and Ray N. McMillan, both of Washington, D. C., Bur. of Int. Rev., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Robert R. Barrett, Sp. Assts. to Atty. Gen., for petitioner.

Harry M. Brostoff, of Chicago, Ill., for respondent.

Before EVANS, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

Petitioner asks us to review the correctness of a decision of the Board of Tax Appeals involving a claimed deficiency for income and excess profits taxes for the years 1936 and 1937 and penalties for the year 1936.

The respondent was incorporated in 1927 in Illinois as a not-for-profit corporation. Its members are all plant owners and operators in the printing industry, the unit of membership being the printing firm. Its purpose is to promote the welfare of the printing industry, improve the conditions of printers and their service to the public, develop better methods of management and ethical relations among themselves and with others through collective cooperative effort, and to secure uniform and united action in the common interests.

Respondent, being a not-for-profit corporation, has no capital stock nor stockholders and has never made any distribution of dividends. It has held meetings of its members, appeared before legislative bodies and discussed contemplated legislation, promoted printing exhibits, distributed cost and production information to its members, supplied credit information to its members through the maintenance of a credit information bureau, supplied an employment service to its members, conducted an estimating course designed to teach employees of the printing trade how to make estimates on printing, promulgated a code of ethics and adopted trade customs for the printing industry, conducted a waste paper bureau for the sale of members' waste paper through a collective sales arrangement, litigated the applicability of the Illinois Retailers' Occupational Tax to the printing industry, and handled refund claims for members of the industry.

Its operating revenues are derived principally from dues paid by its members, fixed on a basis of the members' mechanical payroll. Its income, arising from dues and other sources, has varied from 59% dues, 29% waste paper sales, and 12% other activities in 1930 to 83% dues, 10% waste paper sales, and 7% other activities in 1939. In 1936 and 1937 it received $35,249.50 (60%) and $39,918.50 (66%) from dues, 4% and 13% from waste paper sales, and 36% and 21%

from other activities, respectively. The percentages of income from other activities for 1936 and 1937 include the amounts received for the occupational tax actions and refunds. In 1936 respondent engaged a Tax Service Association to contest the legality of the retailers' occupational tax. The Tax Service secured a favorable decision. For the clerical work and for handling refunds of its members, it received a portion of the amounts recovered.

Its offices are in Chicago and there it keeps its property consisting of office equipment valued on December 31, 1937, at $5,-440.18, less a reserve of $3,527.57. Its balance sheets showed a surplus on December 31, 1927, of $3,823.77, increased as of December 31, 1937, to $36,086.41.

Our problem is to determine whether the respondent is a business league within the provisions of § 101(7) of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Code, § 101(7), which provides that "Business leagues, * * * not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual" shall be exempt from taxation. Article 101(7) of the Treasury Regulation 94, promulgated under the Act, provides: "A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. * * * its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit, even though the business is conducted on a cooperative basis or produces only sufficient income to be self-sustaining, is not a business league."

Petitioner, notwithstanding he concedes that the respondent is a business league in form, organized as a not-for-profit corporation, nevertheless contends that because the respondent conducted a cost accounting and estimating course and waste paper bureau, supplied a credit and employment service and received a percentage of the fees in connection with the litigation concerning the retailers' occupational tax, it was carrying on and was engaged in a regular business of a kind ordinarily carried on for profit. He argues that respondent's activities fall into three categories: (1) activities directed toward unity and cooperation within the industry; (2) the relations of the industry to the public, both of which he concedes improved the industry, but only in so far as the economically sound management of the individual firms resulted in a general improvement; and (3) the services rendered to individual members. He then argues that since exemptions are to be strictly construed, Helvering v. Northwest Steel Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 85 L.Ed. 29, it follows that where part of the activities are outside of the scope of the exemption, exemption does not automatically arise from the mere preponderance of activities permitted by the statute.

We think that Trinidad v. Sagrada Orden, 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458; Crooks v. Kansas City, etc., Ass'n, 8 Cir., 37 F.2d 83; Santee Club v. White, 1 Cir., 87 F.2d 5; and Retailers Credit Ass'n v. Commissioner, 9 Cir., 90 F.2d 47, 111 A. L.R. 152, are helpful in guiding us to a conclusion.

The statute as interpreted by the regulations says that the purpose of the business league must not be to engage in a regular business of a kind ordinarily carried on for profit. Where the business league has proper purposes without prohibited ones, then, if it operates in conformity to it, it is entitled to exemption. To come within the exemption, however, its activities must be directed to the improvement of business conditions or to the promotion of the general objects of one or more lines of business as distinguished from the performance of particular services for individual persons, but if the services are only incidental or subordinate to the main or principal purposes required by statute, then exemption cannot be denied on the ground that the purpose is to engage in a regular business of a kind ordinarily carried on for profit, Retailers Credit case, supra.

The Trinidad case, supra, it is true, did not involve the statute now in question. It did, however, concern the interpretation of a tax exemption statute, whether the plaintiff was organized and operated exclusively for religious, charitable, scientific, or educational purposes. There, as here, it was contended that the plaintiff was operated also for business and commercial purposes in that it traded in wine and other articles. In holding the plaintiff exempt, the court said (263 U.S. page 582, 44 S.Ct.

page 206, 68 L.Ed. 458) : "The articles are merely bought and supplied for use within the plaintiff's own organization and agencies,—some of them for strictly religious use, and the others for uses which are purely incidental to the work which the plaintiff is carrying on. That the transactions yield some profit is in the circumstances a negligible factor. Financial gain is not the end to which they are directed."

Crooks v. Kansas City Hay Dealers' Association, supra, was a suit to recover an income tax illegally collected. The plaintiff was a voluntary association of commission merchants buying and selling hay. Its object was fairly similar to that of the respondent in our case, that is, to promote sound business standards, the benefits to its members being incidental. It employed men to inspect, weigh, and watch cars of hay, for which fees were exacted from the shippers and used for the purpose of paying its employees. The court held that the association was a business league and exempt from taxation.

Petitioner also makes the point that the net earnings in part inured to the benefit of its members. Northwestern Jobbers' Credit Bureau v. Commissioner, 8 Cir., 37 F.2d 880 and Northwestern Municipal Ass'n v. United States, 8 Cir., 99 F.2d 460.

■ In determining whether net earnings inure to the benefit of any private shareholder or individual, each case must stand on its own facts. In the Northwestern Jobbers case, supra, 37 F.2d page 883, the evidence was convincing that the chief, and not the incidental, purposes of the appellant were represented by its activities, for which it received its gross income, and that it was organized for profit. In the Northwestern Municipal Ass'n case, supra, the appellant was incorporated with an authorized capital of 50 shares of the par value of $50 each. The court said (99 F.2d page 463) : "Under the statute, in connection with the inquiry whether the net earnings of the organization claiming exemption as a business league inure to the benefit of private stockholders or individuals, especially where its activities are multifarious and for some of which it makes a charge and for others none, the court often considers which of its activities represents the main purpose of its operations and which are incidental thereto. If its main purpose is to benefit its shareholders or individuals it is not exempt. On the other hand, if benefit to the individuals is secondary and incidental, it is exempt." Continuing, it said: "Since it is clear that appellant was organized to do a regular business ordinarily carried on for profit, and since in the operation of its business its net earnings inured to the benefit of its shareholders and individuals, it was not exempt * * *." It is obvious that those cases are not applicable.

In our case the Board found from all the evidence that the purposes of the respondent were to promote fairness, honesty, and better conditions in the graphic arts industry, that no cash dividend had been paid, that no special individual service was rendered by the respondent to its members without payment therefor adequately representing the cost of the service, and that any business in which respondent had engaged of a kind ordinarily carried on was only incidental or subordinate to its main or principal purpose, and concluded that respondent was a business league within the provisions of § 101(7) of the Revenue Act of 1936.

■■ These findings of fact the Board was free to make; they were warranted by the evidence and are binding upon us. Palmer v. Commissioner, 302 U.S. 63, 70, 58 S.Ct. 67, 82 L.Ed. 50; Helvering v. National Grocery Co., 304 U.S. 282, 294, 58 S.Ct. 932, 82 L.Ed. 1346; and Helvering v. Kehoe, 309 U.S. 277, 60 S.Ct. 549, 84 L.Ed. 751, and since the Board's decision is not based on an erroneous rule of law, it must be affirmed.