ASSOCIATED INDUSTRIES OF CLEVELAND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7264. Promulgated December 31, 1946.

*H. Walter Stewart, Esq.*, and *David A. Gaskill, Esq.*, for the petitioner.

*W. W. Kerr, Esq.*, for the respondent.

## OPINION.

KERN, *Judge*: The question for decision is whether petitioner is a business league within the meaning of section 101 (7) of the Internal Revenue Code, which provides that "Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual" shall be exempt from taxation. The various revenue acts in effect throughout the period here material have contained similar provisions. Although the term "business league" is not defined in the code or the preceding statutes, it is defined in section 19.101 (7)–1 of Regulations 103 and in corresponding sections of the earlier regulations applicable to the taxable years here involved.[1]

A statute creating an exemption must be strictly construed and any doubt must be resolved in favor of the taxing power. Accordingly, if petitioner is to avoid taxation because it is a "business league," as it contends, it must meet the tests laid down by the statute and the Commissioner's regulations which have persisted through the successive reenactments of the statute. In this connection it must be remembered that the recurrent enactment of the statute carried with it the executive interpretation thereof as expressed in the regulations. *Retailers Credit Assn.* v. *Commissioner*, 90 Fed. (2d) 47, and *Underwriters' Laboratories* v. *Commissioner*, 135 Fed. (2d) 371.

[1] SEC. 19.101 (7)–1. *Business leagues, chambers of commerce, real estate boards, and boards of trade.*—A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit even though the business is conducted on a cooperative basis or produces only sufficient income to be self-sustaining, is not a business league. An association engaged in furnishing information to prospective investors, to enable them to make sound investments, is not a business league, since its activities do not further any common business interest, even though all of its income is devoted to the purpose stated. * * *

Petitioner is a "business league" within the letter of the statute. As pointed out by the court in *Crooks* v. *Kansas City Hay Dealers' Assn.*, 37 Fed. (2d) 83, the term "business" is very comprehensive and embraces everything about which a person can be employed, and the term "league" is defined as an agreement or covenant between two or more parties or persons for the accomplishment of some purpose by their cooperation. Combining the two definitions of business and league, we can say that the combined definition literally covers the petitioner organization. An important part of the business of petitioner's active members was the employment of labor; and through petitioner the members cooperated in endeavoring to employ labor under circumstances and upon terms deemed by its members to be advantageous to them. See also *Retailers Credit Assn.* v. *Commissioner, supra*.

Furthermore, we think that petitioner qualifies as a "business league" under the tests laid down in the regulations. It is an unincorporated association of persons, firms, and corporations having a common business interest and its purpose is to promote that interest. The common business interest which has brought and held petitioner's diversified membership together is generally stated in article II of the association's constitution. However, upon reviewing petitioner's actual activities it is clear that the real business interest which petitioner's members have in common is the desire to establish what the members consider to be "industrial peace and sound industrial relations in the community" by advancing and maintaining the "open shop" principle in industry. The members have endeavored to establish employment and labor conditions which are stable and desirable from their standpoint. They wanted a readily available labor market from which they could obtain skilled labor upon such terms and conditions as they considered most favorable to themselves. To develop and insure the labor conditions which they deemed desirable they banded together to form the petitioner association. Through it they have opposed all interference with this free labor market from within or without the community and have sought to reduce labor strife and difficulties to a minimum. To bring about and maintain the conditions which they desire, they have, acting through the petitioner, waged bitter war on the closed shop and on all restrictive governmental regulation in labor matters. They have also used the petitioner as a medium through which they have presented their views on various matters to the public.

The pertinent requirements of the Commissioner's regulations may be paraphrased as follows: (1) It must be "an association of persons having a common business interest"; (2) its purpose must be to promote that common business interest; (3) "its activities should be directed

to the improvement of business conditions of one or more lines of business"; (4) it should not be engaged in a regular business of a kind ordinarily carried on for profit; and (5) its activities should not be confined to "the performance of particular services for individual members." [2]

We have already pointed out that requirements numbered (1) and (2) clearly have been met.

However, we have been gravely troubled by the question of whether petitioner has satisfied the requirement numbered (3) above to the effect that "its activities should be directed to the improvement of one or more lines of business." If it were left to our own unaided decision whether petitioner's activities led to a real and permanent improvement in the employment problems and labor relations of its members, and thus in an improvement of its members' business, we should have to go far outside the record before us in order to reach an answer which would satisfy us. [3] We do not consider that the burden of such a decision is upon us. If petitioner's members were of the opinion that its activities were directed to the improvement of labor conditions in their lines of business, if this opinion was one which could be held by reasonably prudent business men under the same circumstances of time and place, and if the activities themselves were legal when carried on, we must conclude that this requirement of the regulations has been met. It is our duty to construe the revenue statutes of the United States, not to formulate and apply a code of industrial ethics. We, therefore, consider it unnecessary for us to express any judgment concerning the social, political, or economic wisdom or morality of petitioner's activities.

In connection with our discussion on this point, we call attention to the fact that by section 101 (1) of the Internal Revenue Code exemption from taxation is granted to "labor  *  *  *  organizations."

No contention is made by respondent that petitioner's activities were illegal or contrary to public policy when they were engaged in. From the entire record we can not escape the conclusion that petitioner's members believed in good faith that their business interests and the interests of business in general were being improved by petitioner's activities, and, further, that this belief was one which could be held by reasonably prudent business men under the same circumstances of time and place.

We know of no requirement that the purpose of a business league, as that term is used in the statute, must be the betterment of a geograph-

---

[2] There is no requirement, by statute or regulation, that either a business league, or a labor organization, in order to be considered exempt as such, must refrain from carrying on propaganda or influencing legislation. Such a requirement is only applicable to a corporation or other organization operated "for religious, charitable, scientific, literary or educational purposes." See sec. 101 (6), I. R. C.; Regulations 103, sec. 19.101 (6)--1.

[3] For an interesting discussion of this general subject, see Mason, Brandeis, New York 1946, pp. 299-315.

ical community rather than the advancement of the selfish interests of a community of businesses having a common objective.

Respondent contends that petitioner does not comply with the requirement of the regulations that in order to come within the definition of a business league the association must not have the purpose of engaging in a regular business of a kind ordinarily carried on for profit. As pointed out by the court in *Retailers Credit Assn.* v. *Commissioner*, *supra*, the proper interpretation of this rule is that, if the purpose to engage in such business is only incidental or subordinate to the main or principal purposes required by the statute and regulations, then the exemption can not be denied on the ground that the purpose is to engage in such a business. See also *Commissioner* v. *Chicago Graphic Arts Federation, Inc.*, 128 Fed. (2d) 424, wherein it is stated:

> Where the business league has proper purposes without prohibited ones, then, if it operates in conformity to it [the statute as interpreted by the regulations], it is entitled to exemption. To come within the exemption, however, its activities must be directed to the improvement of business conditions or to the promotion of the general objects of one or more lines of business as distinguished from the performance of particular services for individual persons, but if the services are only incidental or subordinate to the main or principal purposes required by the statute, then exemption cannot be denied on the ground that the purpose is to engage in a regular business of a kind ordinarily carried on for profit.

We have already pointed out that petitioner's activities were directed to the improvement of business conditions of one or more lines of business within the meaning of the regulations. It is true that certain of the association's activities, such as the employment service, were activities normally engaged in by others as a regular business and for profit. However, the real and principal purpose of petitioner was to establish what the members considered to be "industrial peace and sound industrial relations in the community by advancing and maintaining the 'open shop' principle in industry." The employment service and its other activities of the kind ordinarily carried on for profit were only incidental and subordinate to that main purpose. *Commissioner* v. *Chicago Graphic Arts Federation, Inc.*, *supra*, and *American Fisherman's Tuna Boat Assn.* v. *Rogan*, 51 Fed. Supp. 933. As a matter of fact, petitioner dropped the employment service in 1942 without materially changing the nature and scope of its operations.

With regard to the requirement of the regulations numbered (5) above, respondent also makes the contention that the association's members received pecuniary benefits by virtue of their membership, since they were getting from it particular services which they would otherwise have to buy. This contention is based upon the statutory provision that in order for a business league to be exempt from taxation no part of its net earnings may inure to the benefit of any private

shareholder or individual. In determining whether net earnings inure to the benefit of any private shareholder or individual, each case must stand on its own facts. *Commissioner* v. *Chicago Graphic Arts Federation, Inc., supra; Waynesboro Manufacturers Association*, 1 B. T. A. 911. Net earnings or profit may inure to the benefit of shareholders or members of a business league in other ways than in dividends or other distributions of money. *Northwestern Jobbers' Credit Bureau* v. *Commissioner*, 37 Fed. (2d) 880, and *Northwestern Municipal Assn., Inc.* v. *United States*, 99 Fed. (2d) 460, 463. However, as stated by the court in the *Northwestern Municipal Association* case:

Under the statute, in connection with the inquiry whether the net earnings of the organization claiming exemption as a business league inure to the benefit of private stockholders or individuals, especially where its activities are multifarious and for some of which it makes a charge and for others none, the court often considers which of its activities represents the main purpose of its operations and which are incidental thereto. If its main purpose is to benefit its shareholders or individuals it is not exempt. On the other hand, if benefit to the individuals is secondary and incidental, it is exempt. * * *

Of course each individual member of the petitioner association perhaps profited or considered that it profited by such success as the association had in the accomplishment of its main purpose. Similarly, when a member was confronted with a strike situation and received wage data and counsel from the association, that member received an individual benefit. However, petitioner's *raison d'etre* was not to furnish services to individual members which they could purchase elsewhere, but to serve the interest of the entire community of members by furnishing the support of the whole association to a member who needed it. The rendering of such service to a member was but part and parcel of a whole scheme of establishing and maintaining "sound industrial relations" (from the viewpoint of the members) by the concerted action of all the members acting through the association. It must be remembered that the petitioner's fundamental tenet was that "each defeat of a closed shop assault is a victory for the entire industrial community." See *Retail Credit Association of Minneapolis* v. *United States*, 30 Fed. Supp. 855.

The fact that petitioner has established no program for the distribution of its assets in event of dissolution does not require a holding that its net earnings may inure to the benefit of its individual members. "Some hazy, indefinite theory of how a member of the association might eventually receive something in case of its dissolution should not be permitted to defeat the intention of Congress to exempt associations of this character from income taxes." *Crooks* v. *Kansas City Hay Dealers' Assn., supra.*

In determining whether petitioner is an organization of the same general class as a chamber of commerce or board of trade, as required

by the regulation, we think it significant that petitioner's origin in part, at least, stemmed out of certain activities undertaken by the Cleveland Chamber of Commerce in the labor relations field in 1919 and 1920. After petitioner was organized it cooperated in many matters with the local chamber of commerce, and both were interested in labor relations problems in Cleveland. However, the chamber's activities were broad in scope and it did not concentrate on the labor problems of the manufacturing community to the extent that petitioner did. It is particularly significant that the National Industrial Council, to which petitioner belongs, includes a number of chambers of commerce in its membership. We, therefore, believe that petitioner is an organization of the same general class as a chamber of commerce or board of trade. Cf. *Retailers Credit Assn.* v. *Commissioner* and *Crooks* v. *Kansas City Hay Dealers' Assn., supra.*

Inasmuch as petitioner qualifies as a busines league under the definition contained in the applicable regulations, and since it is not organized for profit and no part of its net earnings inures to the benefit of any private shareholder or individual, the respondent erred in determining that the petitioner was not exempt from taxation under the provisions of section 101 (7) of the Internal Revenue Code and the corresponding provisions of prior revenue acts.

Reviewed by the Court.

*Decision will be entered for the petitioner.*