## MILWAUKEE ASS'N OF COMMERCE v. UNITED STATES.

### Civ. No. 3081.

District Court, E. D. Wisconsin.

April 14, 1947.

Zimmers, Randall & Zimmers, of Milwaukee, Wis., for plaintiff.

Timothy Cronin, U. S. Atty., and E. J. Koelzer, Asst. U. S. Atty., both of Milwaukee, Wis., Sewall Key, Acting Asst. Atty. Gen., and Andrew D. Sharpe and Maurice P. Wolk, Sp. Assts., to the Atty. Gen., for defendant.

DUFFY, District Judge.

This is a suit for the recovery of income and excess profits taxes paid by the plaintiff for its fiscal years ending in 1940, 1941, and 1942. Plaintiff claims exemption from taxation under Sec. 101(7) of the Internal Revenue Code, Title 26 U.S.C.A. Int.Rev.Code, § 101(7), which provides: "The following organizations shall be exempt from taxation under this chapter— * * * (7) Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual."

The Milwaukee Association of Commerce, the taxpayer herein, although in existence for many years, was organized in 1927 under the laws of Wisconsin for the stated purpose "to foster, protect, and advance the commercial, industrial and civic interests of the City and County of Milwaukee * * *" The corporation has no capital stock and is prohibited from paying dividends. It has 2,564 members representing business firms, professional men and individuals. Its activities are conducted through 15 divisions or bureaus under the direction of an executive director and 11 managers. It has 32 committees on which 500 representatives of members serve on a voluntary basis.

Examples of the divisions of the association are the Convention Bureau which solicits and gives service to conventions, the Safety Division which conducts safety, fire prevention and first aid schools, the Air Service and Transportation Bureaus which work to improve the city's transportation facilities, and the Retail, Industries, and Trade Promotion Bureaus which seek to attract business concerns and consumers to Milwaukee. However, it is by reason of the operation of the division known as the Credit Bureau that the government claims the taxpayer is not entitled to the exemption claimed.

The Credit Bureau became a part of the Milwaukee Association of Commerce 26 or 27 years ago, and has operated as one of its bureaus or divisions since that time. During the period here in question it issued 150,000 credit reports a year or an average of 500 credit reports per business day. It yielded a gross income of approximately $100,000 annually, and if such income were taxable, produced a taxable net income of $7,375 in 1940, $4,930 in 1941, and $7,589 in 1942. Members of the association were charged 45¢ per standard report while non-members were required to enter credit service contracts under which they paid 50¢ per report with a minimum charge of $25 per contract period. There were less than 100 contract users, and the bulk of

the service was rendered to the members of the association.

Treasury Regulations 103 provides: "Sec. 19.101(7)-1. Business leagues, chambers of commerce, real estate boards, and boards of trade.—A business league is an association of persons having some common business interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit even though the business is conducted on a cooperative basis or produces only sufficient income to be self-sustaining, is not a business league. * * *"

The Association of Commerce kept the books of the Credit Bureau and it was the general objective of those directing its policies to break even financially. Some years the Credit Bureau lost money, while in the years in question it made a small profit.

It must be conceded that taxpayer is a "chamber of commerce" and also that it was not organized for profit. Although, under a consent decree in an anti-trust suit brought by the government in 1933 against the Associated Credit Bureaus of America, Inc., the Milwaukee Association of Commerce Credit Bureau was required to sell service to non-members as well as to members, the great bulk of its reports did go to members. During the war years some reports were also rendered gratis to some agencies of the federal government, such as the F.B.I.

I think that the case at bar is governed by the decision in Commissioner of Internal Revenue v. Chicago Graphic Arts Federation, Inc., 7 Cir., 128 F.2d 424. In that case the taxpayer was organized as a nonprofit corporation. Its purpose was to promote the welfare of the printing industry, improve the conditions of printers and their service to the public, develop better methods of management and ethical relations among themselves and with others through collective cooperative effort, and to secure uniform and united action in the common interests. It appeared before legislative bodies and discussed contemplated legislation, promoted printing exhibits, distributed cost and production information to its members, *supplied credit information to its members through the maintenance of a credit information bureau,* supplied an employment service to its members, conducted an estimating course designed to teach employees of the printing trade how to make estimates on printing, promulgated a code of ethics and adopted trade customs for the printing industry, conducted a waste paper bureau for the sale of members' waste paper through a collective sales arrangement, litigated the applicability of the Illinois Retailers' Occupational Tax to the printing industry, and handled refund claims for members of the industry. In the years 1936 and 1937 involved in that suit, the taxpaper received respectively $35,249.-50 (60%) and $39,918.50 (66%) from dues, 4% and 13% from waste paper sales, and 36% and 21% from other activities. The court held that the taxpaper was exempt and pointed out (128 F.2d at page 426). "* * * if the services are only incidental or subordinate to the main or principal purposes required by statute, then exemption cannot be denied on the ground that the purpose is to engage in a regular business of a kind ordinarily carried on for profit," and cited Retailers Credit Ass'n v. Commissioner, 9 Cir., 90 F.2d 47, 111 A.L. R. 152.

In the case at bar taxpayer received a total of $337,734.19 from membership dues for 1939, 1940, and 1941, while the net profit for the same years from the operation of the Credit Bureau was approximately $20,000. It is apparent that the net income from the Credit Bureau was only an incidental factor in producing the finances necessary for taxpaper to carry on its manifold and varied activities.

The government urges, however, that the operation of the Credit Bureau is foreign to the other activities of the taxpayer and also that by reason of the Credit Bureau functioning there was a benefit to the private shareholders or individuals which should deny taxpayer the exemption of the

statute. As to being foreign to the activities of the association, the evidence discloses that other associations of commerce in Wisconsin, such as those located in Wausau, Oshkosh, Kenosha, and Waukesha, operated credit bureaus. In fact one witness stated that nearly all the associations of commerce in Wisconsin have that sort of a set-up. It therefore cannot be considered as foreign to the activities ordinarily engaged in by associations of commerce. As to the benefit to shareholders, the court in Commissioner of Internal Revenue v. Chicago Graphic Arts Federation, Inc., supra, sustained the finding that no special individual service was rendered by the respondent to its members without payment therefor adequately representing the cost of the service, and that any such business was incidental and subordinate to the main purpose of the taxpayer.

I conclude in the case at bar that the operation of the Credit Bureau as one of the 15 bureaus of the Milwaukee Association of Commerce was incidental to its principal purposes. Judgment must go for the plaintiff.