**PEPSI–COLA BOTTLERS' ASSOCIA-TION, INC., Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 15547.**

United States Court of Appeals
Seventh Circuit.

Nov. 10, 1966.

Edward V. Hanrahan, U. S. Atty., Chicago, Ill., Richard M. Roberts, Asst. Atty. Gen., Thomas Silk, Jr., Lee A.

Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D. C., for appellant.

Edward H. Hatton, Herbert B. Olfson, Chicago, Ill., for appellee. Raymond, Mayer, Jenner & Block, Chicago, Ill., of counsel.

Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

The United States of America, defendant-appellant, has taken this appeal from the judgment of the United States District Court holding that the plaintiff-appellee, Pepsi-Cola Bottlers' Association, Inc., was exempt from payment of income tax as a business league and hence was entitled to refund of taxes paid for 1959, after the Internal Revenue Service had refused to grant such exemption.

The facts are largely undisputed. The case was submitted to the Trial Court on a stipulation.

The Internal Revenue Code of 1954, § 501(c) (6) provides an exemption for business leagues not organized for profit, where no part of the net earnings inures to the benefit of any private shareholder or individual.

Membership in the plaintiff organization is limited to individuals, firms, or corporations engaged in the bottling and sale of Pepsi-Cola. As of the end of 1958, about 83% of the Pepsi-Cola bottlers in this country were members. During 1959, about 90% of the members also bottled other soft drinks.

· The purposes of the organization are to promote, extend, further, protect, and improve the trade and business of bottling and selling Pepsi-Cola. Each member is free to conduct his business without accountability to the Association or other members. In the event of dissolution, the assets of the plaintiff are to be distributed to the Red Cross or other charitable organizations.

The plaintiff's income comes from dues (calculated upon the number of units of Pepsi-Cola concentrate purchased from the Pepsi-Cola Company per year) and interest. The Pepsi-Cola Company franchises bottlers on certain conditions.

The statute in question is implemented by Treasury Regulations on Income Tax (1954 Code), § 1.501(c) (6)–1 which define an exempt organization as having activities directed to the improvement of business conditions of one or more *lines of business* as distinguished from the performance of particular services for individual persons.

The government takes the position that the plaintiff fails to qualify as "a line of business," the Commissioner in the past having denied exemption to organizations associated with one particular brand of product. The government sees the appropriate "line of business" here as one embracing all soft drinks. There is a soft drink association to which many of the plaintiff's members belong. The government argues that the plaintiff serves its members solely as a convenience and economy in their business giving benefits only to its members. The government particularly notes that the improvement of ethical standards was not a function of the plaintiff, that function being deliberately left to the aforementioned trade association which serves the soft drink industry as a whole. Further, the government contends that the plaintiff provides valuable services inuring only to the benefit of its members by way of free advice on bookkeeping and accounting methods and management training for younger executives of members—for much of which the financing was procured from the Pepsi-Cola Company.

The Association was organized in 1949 to solve certain problems common to Pepsi-Cola bottlers some of whom felt that the Pepsi-Cola Company took no interest in their problems.

Plaintiff's directors and officers receive no compensation. There is an Executive Secretary who is a salaried employee. The Association represents its members vis-à-vis the Pepsi-Cola Company. The Association has a num-

ber of committees, for example, (1) a Standardization Committee which issues questionnaires and disseminates information on commonly used procedures and equipment, much of which is also usable for other soft drinks; (2) an Insurance Committee which studies and reports on types of insurance available; (3) a Young Management Committee which conducts a program of conferences for younger personnel who are potential executives.

There are also auditing, by-laws, nominating and resolutions committees. The Association conducts periodic meetings and issues a news bulletin. Non-member bottlers of Pepsi-Cola receive the bulletin, the questionnaires and reports. The Association renders no service or conducts any activity for individual bottlers or limited groups of bottlers.

■■ The Association falls within the scope of § 501(c) (6) and the regulations mentioned above. To be a business league it need not be devoted entirely to the general public welfare. Its operations do contribute to the improvement of Pepsi-Cola bottling business and hence to the public consumers, unlike the operations considered in Produce Exchange Stock Clearing Ass'n, Inc. v. Helvering, 2 Cir., 1934, 71 F.2d 142, which did merely provide the convenience of clearing house facilities for a limited group of individual traders in securities. The Court expressly distinguished that case from Crooks v. Kansas City Hay Dealers' Ass'n, 8 Cir., 1929, 37 F.2d 83, 85, on which the plaintiff relies.

This Association is not organized for profit. None of its net earnings inure to the members directly or indirectly. Commissioner of Internal Revenue v. Chicago Graphic Arts Federation, 7 Cir.. 1942, 128 F.2d 424, 427.

In Associated Industries of Cleveland v. Commissioner, 7 T.C. 1449 (1946) the Tax Court held that the group under consideration was a business league in that it was an association of persons having a common business interest with activities in good faith directed to the improvement of business conditions, not engaged in a regular business carried on for profit, and whose activities were not confined to the performance of particular services for individual members. See also National Leather & Shoe Finders Assn. v. Commissioner, 9 T.C. 121 (1947).

The plaintiff engages in no regular business. Unlike the National Automobile Dealers' Assn., 2 T.C.M. 291 (1943) the plaintiff derives no income from its activities which can operate even to lessen dues.

■■ The plaintiff Association cannot be disqualified merely because its members all bottle a particular soft drink product. It is unreasonable to write into the statute and regulations a limitation wholly unsupported by the legislative history.

The judgment of the District Court is affirmed.

Affirmed.

KILEY, Circuit Judge (dissenting).

I respectfully dissent. In my opinion, taxpayer Association is not entitled to the exemption under section 501(c) (6) which includes: "Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual."

The Association is not a chamber of commerce, real estate board or board of trade, nor is it like any one of them. Therefore, that it is not organized for profit is irrelevant unless it is a business league. To qualify as a business league it must possess the general characteristics of chambers of commerce, real estate boards and boards of trade under the doctrine of *noscitur a sociis*. Produce Exchange Stock Clearing Ass'n v. Helvering, 71 F.2d 142, 144 (2d Cir. 1934). In that case the taxpayer corporation, wholly owned by the New York Produce Exchange, was created to perform clearing services for its members.

The court held that "[t]he statute could never have contemplated that by creating a subsidiary corporation to furnish such facilities, even though they were intended to be performed at cost, it could obtain tax exemption for its creature." Id. at 143. Like the association in *Produce Exchange*, the Bottlers' Association carries on its activities solely for the direct benefit of its members. "Nothing is done to advance the interests of the community or improve the standards or conditions of a particular trade * * *." Id. at 144.

The facts here distinguish Crooks v. Kansas City Hay Dealers' Ass'n, 37 F.2d 83 (8th Cir. 1929). There fifty or sixty hay dealers combined to aid commerce, establish an honest hay market, and thus contribute to the betterment of Kansas City. The claim of public service, through the advancement of its members' competitive business interests, made by the Bottlers' Association in this case, was rejected by the court in the *Produce Exchange* case, 71 F.2d at 144. The benefit in any real sense is solely for Pepsi-Cola dealers.

A business league's activities under Treasury Regulation § 1.501(c)(6)–1[1] should be directed to improvement of conditions of "one or more lines of business" as distinguished from services for individual persons. The *Crooks* case involved a "line of business"—the hay business, and the association there did not compete with any business. 37 F.2d at 84. Similarly, in Commissioner of Internal Revenue v. Chicago Graphic Arts Federation, 128 F.2d 424 (7th Cir. 1942), this court affirmed the holding of the United States Board of Tax Appeals that Graphic Arts, whose members were all printing plant owners, combined to form an association to improve the printing industry—a line of business. In that case, the services to individuals were "incidental" to the general purpose of improving the industry and benefiting the public. Id. at 426. Bottling Pepsi-Cola is not a line of business. It is only one of a line—one of many competing businesses in the cola and soft drink industry. And the services rendered by the Association to its members are not incidental to a general purpose of improving business conditions. They are essential to an express general purpose, the improvement of the members' competitive position as against non-members.

I would reverse the Tax Court's judgment.

---

1. A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus, its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. . . .