## OREGON CASUALTY ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86401. Promulgated February 17, 1938.

*Robert T. Jacob, Esq.,* for the petitioner.
*W. W. Kerr, Esq.,* for the respondent.

OPINION.

ARUNDELL: The question here is whether the petitioner is such an organization as is exempted from tax under section 103 (7) of the Revenue Act of 1932, which provides as follows:

The following organizations shall be exempt from taxation under this title—

(7) Business leagues, chambers of commerce, real estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual.

The Treasury regulation [1] issued under this section interprets the statutory provision as requiring that the organization not be engaged "in a regular business of a kind ordinarily carried on for profit."

It was stated by the Board in the case of *Produce Exchange Stock Clearing Association, Inc.*, 27 B. T. A. 1214; affd., 71 Fed. (2d) 142, that

* * * Generally speaking, our conception of a business league exempt from income tax is an association of business men or of business enterprises, incorporated or unincorporated, which has for its purpose the furtherance of the interest of its members by way of furnishing of information to its members, or the performance of services which are not ordinarily carried on by businesses for profit, and which is not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual.

The Circuit Court of Appeals in the same case stated that:

* * * The numerous subdivisions of section 103 of the Revenue Act of 1928 (26 USCA—Sec. 2103) and the corresponding provisions in the earlier acts, specify organizations which, in the great majority of instances, are evidently granted exemption because of the benefit to be derived by the public from their activities.

The respondent contends that the petitioner is not exempt from tax because "it is not in any sense conducted for the common interest of the community, or a number of persons, or for the good of, or in the interest of the trade", but only as an adjunct to and in the interest of the private business of its members, citing *Growers Cold Stor-*

---

[1] ART. 528 (Reg. 77). *Business leagues, chambers of commerce, real estate boards, and boards of trade.*—A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus its activities should be directed to the improvement of business conditions or to the promotion of the general objects of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit, even though the business is conducted on a cooperative basis or produces only sufficient income to be self-sustaining, is not a business league. An association engaged in furnishing information to prospective investors, to enable them to make sound investments, is not a business league, since its activities do not further any common business interest, even though all of its income is devoted to the purpose stated. A stock exchange is not a business league, a chamber of commerce, or a board of trade within the meaning of the law and is not exempt from tax.

*age Co.*, 17 B. T. A. 1279, and *Produce Exchange Stock Clearing Association, Inc., supra.* He argues further that the type of service rendered by the petitioner is usually rendered in consideration for fees by corporations operated for profit, citing *Retailers Credit Association of Alameda County* v. *Commissioner,* 90 Fed. (2d) 47, affirming 33 B. T. A. 1166. Respondent also contends that the net earnings of the petitioner inure to the benefit of its individual members since any excess of the assessment collected in any year over the amount needed for operating expense is used to proportionately reduce the assessment for the following year.

We have concluded that the petitioner is entitled to the exemption which it claims since we do not think the arguments advanced by the respondent are valid on the facts of this case.

It is clear that there is a substantial public interest in the checking of the charges for insurance policies in order to assure conformity with established rates. This is shown prima facie in the present case by the fact that this procedure was ordered by the insurance commissioner of the state, under his power to regulate the insurance business in the public interest. The interest of the public in requiring insurance companies to maintain a sound actuarial basis is not limited to the large body of customers of the insurance companies, but extends to the whole community, which would be indirectly at least, if not directly, affected by the failure of its insurance companies. It is to preserve a sound actuarial basis for charges by the insurance companies through the prevention of cut-throat competition that rate checking is required. It is a common thing in the fire insurance field, and has the same justification for existence in other insurance fields where established rates are prescribed. There is a provision of the Oregon statutes which says that "The business of conducting a rating bureau in this state is public service in character and shall be conducted without profit to any party, except that fair and reasonable compensation shall be paid for all services actually rendered and necessary to the business." (Oregon Code 1930, 46–1605.) While it is not altogether clear from the statute whether this provision is limited to fire insurance rating bureaus, nevertheless, even apart from any statutory designation, we are convinced that the business of a rating bureau is public service in character. Rate checking also operates in the interest of the insurance companies themselves, although because of its expense it might not be undertaken by the companies voluntarily. The petitioner's other function, of furnishing statistical information regarding undesirable risks, likewise operates in the interests of the public as well as of the insurance trade. The petitioner thus comes within the requirements for exemption which are emphasized in *Growers Cold Storage Co.,*

*supra*, and *Produce Exchange Stock Clearing Association, Inc., supra.*

The other arguments of the respondent merit little attention. His argument that the type of service rendered by the petitioner is usually rendered by corporations operated for profit does not find support in the evidence. On the contrary, it appears that the Oregon Rating Bureau, which performs for fire insurance companies the same function as the petitioner does in its field, is a nonprofit organization. Also, the evidence regarding the National Bureau of Casualty & Surety Underwriters, while showing that that organization will do rating for nonmembers upon the payment of fees, does not show that it is operated for profit. We can not find from the evidence that the petitioner was engaged "in a regular business of a kind ordinarily carried on for profit."

It is of course clear that the petitioner had no "earnings" as that term is commonly understood and there were, therefore, no earnings to inure to the benefit of any private individuals or member corporations. The petitioner was organized and operated as a nonprofit institution and had no capital stock outstanding. Assessments were made as needed to meet the expenses of operating the association apportioned on the basis of the business written by each member. In any period when the assessments exceeded the expenditures there would of course be some cash on hand. This was never distributed to anyone, but was retained for meeting future expenses. Since the assessments were apportioned on the basis of the prior year's business written by each member and adjusted at the close of the year to conform with the business written during the current year, there were sometimes credits to members which would apply in reduction of subsequent assessments. We do not think that these credits inured to the benefit of private individuals in the sense which would require the denial of the exemption provided for in section 103 (7), *supra.* Cf. *King County Insurance Association*, 37 B. T. A. 288.

*Decision will be entered for the petitioner.*

