WASHINGTON STATE APPLES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100723.   Promulgated January 8, 1942.

*A. J. O'Connor*, *Esq.*, for the petitioner.
*E. C. Adams*, *Esq.*, for the respondent.

### OPINION.

HILL: The first question presented to us for solution is whether petitioner is exempt from tax either as an "agricultural organization" or as a "business league" under section 101 of the Revenue Act of 1936 (hereinafter all sections are from this act). We believe that the character of petitioner clearly brings it within the exemptive provisions of section 101 (7).[1] Therefore, although perhaps it would be exempt as an agricultural organization under section 101 (1), we need not discuss this provision nor express any opinion about its applicability.

Regulations 94, relating to the Revenue Act of 1936, provides in part as follows:

ART. 101 (7)–1. *Business leagues, chambers of commerce, real estate boards, and boards of trade.*—A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit, even though the business is conducted on a cooperative basis or produces only sufficient income to be self-sustaining, is not a business league. * * *

This administrative interpretation of the term "business league" is substantially similar to prior administrative interpretations which we have long approved. *Uniform Printing & Supply Co.*, 9 B. T. A. 251; affd., 33 Fed. (2d) 445. A short resumé of the facts will suffice to show that petitioner meets all the requirements of the statute and the regulations.

Petitioner was organized by the apple growers of the State of Washington as a nonprofit corporation. The object and purpose was to advertise and promote the sale of Washington apples. The reason for petitioner's organization was the poor condition of the apple growing business due to a decline in the national per capita consumption of this fruit. Thus it appears that the apple growers of Washington had a common interest, i. e., the well-being of their

---

[1] SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS.

The following organizations shall be exempt from taxation under this title—

* * * * * * *

(7) Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual.

industry, and the purpose for the formation of petitioner was to promote that interest. This much appears to be conceded on brief by the respondent.

The principal contention of the respondent is that petitioner was organized to carry on a "regular business of a kind ordinarily carried on for profit" and to perform particular services for the individual apple growers to whose benefit the earnings of petitioner inure.

We think the facts of the instant case and the authorities refute respondent's argument. In the cases relied upon by the respondent the primary object of the business league was either to make a profit or to render services to individual members. *Retailer's Credit Association of Alameda County* v. *Commissioner*, 90 Fed. (2d) 47; *Northwestern Municipal Association, Inc.* v. *United States*, 99 Fed. (2d) 460. The facts of the instant case readily distinguish it from those cases because this petitioner was organized to better the industry as a whole by industrial rather than individual advertising. *Retail Credit Association of Minneapolis* v. *United States*, 30 Fed. Supp. 855. Neither the statute nor the regulations requires the betterment of the general commercial welfare, but only that the activities be directed to the improvement of business conditions of one or more lines of business. G. C. M. 21000, C. B. 1939-1 (part 1), p. 124. However, the total collections which petitioner made by the assessment of approximately 1 cent per box shows that over 16,000,000 boxes of apples were shipped. Certainly, this demonstrates that apple growing and shipping was an important industry in that state. Thus the general commercial welfare of the community as a whole as well as the growers would be benefited by the improvement of business in the apple industry. Cf. *Oregon Casualty Association*, 37 B. T. A. 340; *Crooks* v. *Kansas City Hay Dealers Association*, 37 Fed. (2d) 83. This result is inherent in the type of advertising in which petitioner was organized to and did engage in. No brand name or grower was mentioned in the advertisements, but only the varieties of apples grown in Washington. This type of advertisements did not replace individual advertising, but only increased the demand for Washington apples. The members and other growers benefited indirectly only by the increased demand for Washington apples. We can see no merit in respondent's contention that this is the type of business normally carried on for profit. This might be true if petitioner itself had actually placed the advertising matter. Cf. *Retail Credit Association of Minneapolis* v. *United States, supra.* Here petitioner did not even do that, but hired a national advertising agency to place the advertisements.

The respondent argues that the provision for distributing the assets of the petitioner at its dissolution, together with the practice of re-

ceiving amounts from nonmembers, made earnings inure to the benefit of the stockholders or members. A small part of the receipts of the petitioner came from nonmembers. Those payments may have been gifts rather than income, but we need not decide that question. The petitioner was required to spend all of the money which it received, and there was no provision for distributing any amounts to its members or other individuals except upon dissolution. The petitioner had no surplus, and actually when it dissolved its only assets were $299.48 in cash and some used office furniture. Those assets had to be distributed among the members in proportion to amounts paid in by the members. The return of the cash was in the nature of a refund, since it was much less than the amount members had paid in during that year. *Oregon Casualty Association, supra.* The circumstance that these two insignificant items were to be distributed to members upon dissolution does not make the petitioner subject to tax.

We hold petitioner is exempt from tax by the terms of section 101 (7) and the regulations relating thereto. Under this disposition of the case we need not decide any of the further questions posed by the parties.

*Decision will be entered for petitioner.*