**AMERICAN PLYWOOD ASSOCIATION,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 3331.

United States District Court
W. D. Washington, S. D.

Feb. 1, 1967.

As Modified June 16, 1967.

Alfred J. Schweppe, Schweppe, Reiter, Doolittle & Krug, Arthur S. Langlie, Seattle, Wash., for plaintiff.

Arthur L. Biggins, Jerome L. Hillis, Dept. of Justice, Washington, D. C., Mitchell Rogovin, Asst. Atty. Gen., Eugene G. Cushing, U. S. Atty., Charles L. Billinghurst, Asst. U. S. Atty., Tacoma, Wash., for defendant.

## MEMORANDUM DECISION

BOLDT, District Judge.

In this civil suit the American Plywood Association, a non-profit Washington corporation formerly named Douglas Fir Plywood Association, seeks refund of federal income taxes for the year 1961 which are alleged to have been erroneously assessed and collected in the amount of $292,391.71. Jurisdiction of this court is based upon 28 U.S.C. § 1346.

Plaintiff is a trade association of softwood plywood manufacturers to which, from its organization in 1936 until 1960, the Internal Revenue Service (hereafter IRS) granted tax exemption as a qualified "business league" under 26 U.S.C. § 501(c) (6).

In 1925 twelve manufacturers produced 153 million square feet of plywood. In 1965, 174 plants produced almost 12½ billion square feet. In 1961, plaintiff's members accounted for 92.7% (almost eight billion square feet) of the total volume of plywood production in the United States. Throughout the years plaintiff's basic purpose has been "to promote the common business interest of the plywood industry and apprise the public of its scope and character." (Articles of Incorporation, Ex. 1) Dedication to and effective promotion of that purpose has largely been responsible for the remarkable development and expansion of what is now one of the nation's major industries. As that industry has grown plaintiff's activities have expanded to meet the needs of the industry. That plaintiff's extensive achievements in behalf of the plywood industry as a whole are to the great advantage of the American public is beyond question and not challenged by defendant.

On April 26, 1961 plaintiff's by-laws were amended to provide for an increase in its membership dues "to be devoted to the promotion of DFPA grade-trade-marked plywood primarily through the medium of television." (PT Order p. 3-4). On January 30, 1962 the Commissioner of Internal Revenue was notified of this amendment. Plaintiff's tax exempt status was re-examined by IRS in April, 1963 and on January 27, 1965 such status was revoked retroactive to the tax year ending December 31, 1961.

Upon the reasonable inferences to be drawn from the facts stipulated in the Pretrial Order and the evidence presented during the trial the court must determine the primary ultimate issue: Is plaintiff entitled to exemption from federal income taxes as a "business league" within the meaning of the above-cited

section of the Internal Revenue Code? Two secondary questions are presented: (1) Is defendant estopped from revoking the exemption previously granted plaintiff? and (2) May defendant make the revocation ruling of January 27, 1965 applicable retroactively to years prior to 1965?

■ § 501(c) (6) exempts from income tax "[b]usiness leagues * * * not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual." The pertinent Treasury Regulation, 1.501(c)–(6)–1, provides that

"A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus, its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons."

The Regulation has not been changed since 1929 and has the force and effect of law. Apartment Operations Ass'n v. Commissioner of Internal Revenue, 136 F.2d 435, 436 (9th Cir. 1943); Retailers Credit Ass'n of Alameda County v. Commissioner of Internal Revenue, 90 F.2d 47, 50, 111 A.L.R. 152 (9th Cir. 1937).

The Tenth Circuit in United States v. Oklahoma City Retailers Ass'n, 331 F.2d 328, 330–332 (10th Cir. 1964) enumerated the conditions provided by the statute and regulations which must be met to qualify as a tax-exempt business league under 501(c) (6) as follows:

"(1) It must be a business league; (2) it must not be organized for profits; (3) it must be an organization no part of the net earnings of which inures to the benefit of any private shareholder or individual; (4) it must be an association of persons, incorporated or unincorporated, having common business interests the purpose of which is to promote those common interests; (5) its activities must be directed at improving the business conditions of one or more lines of business and not particular services for individual persons; and (6) it may not engage in a business ordinarily carried on by businesses for profit. If any of these conditions are not met, the exemption is not applicable."

■ The rule is well established that a trade association whose main purpose justifies exemption from income tax will not forfeit tax exempt status by engaging in incidental activities which, standing alone, would be subject to taxation. Retailers Credit Ass'n v. Commissioner of Internal Revenue, supra, 90 F.2d at 51–52, citing Crooks v. Kansas City Hay Dealers', 37 F.2d 83 (8th Cir. 1929), Trinidad v. Sagrada Orden, 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458 (1923); and see, United States v. Omaha Live Stock Traders Exchange, 366 F.2d 749 (8th Cir. 1966).

■ The ultimate fact as to which activities of a business league are primary and which are incidental must be determined in each case upon the particular circumstances involved and the reasonable conclusions to be drawn therefrom. United States v. Omaha Live Stock Traders, supra; General Contractors Ass'n of Milwaukee v. United States, 202 F.2d 633 (7th Cir. 1963); Commissioner of Internal Revenue v. Chicago Graphic Arts Federation, 128 F.2d 424 (7th Cir. 1942).

Defendant admits that three of the conditions necessary to plaintiff's exemption are indisputably shown: (1) a business league, (2) not organized for profit, and (3) an association of persons having common interests to promote. (Defendant's trial brief, p. 4) Defendant relies upon only some phases of two of plaintiff's many activities—promotion and quality control—as justifying revocation of plaintiff's exemption as a business league (Defendant's trial brief, p. 3).

All of plaintiff's inter-related activities as they have developed in the past thirty years must be considered in entirety to determine the "principal" activities of

plaintiff as distinguished from those which are "incidental." A four page list of activities which defendant admits plaintiff has carried on for many years to the great benefit of all softwood plywood manufacturers, whether members of plaintiff association or not, appears on pages 39–42 of the Pretrial Order. Many quality control and promotional activities of plaintiff are included in this list. The remarkable accomplishments of plaintiff in developing extensive use of plywood for a wide variety of building material purposes, and expanding the entire plywood industry on a vast scale since 1936 is indisputed. (Statistics, Pretrial Order, pp. 6, 12)

Defendant contends that plaintiff's quality control and promotional activities in 1961 became more than incidental to plaintiff's main purpose and activities.

## QUALITY CONTROL

Defendant contends that, standing alone, plaintiff's quality control activities are (1) a regular business of a kind ordinarily engaged in for profit; (2) performance of particular services for individual members; and (3) the use of plaintiff's income for the benefit of individual members. Any one of the foregoing features of quality control would bar exemption as a business league, unless the particular feature be within the "incidental" exception previously stated. Applicability of the exception is well settled as defendant concedes in its trial brief, p. 6.

After May 1, 1959, U.S. Department of Commerce Commercial Standard CS 45 required that manufacturers use independent agencies to certify production conformance to government standards and two commercial laboratories have since offered such services which previously were available only from plaintiff. Since 1941 plaintiff has been the sponsor

before the U.S. Department of Commerce of all amendments to and revisions of CS 45 and CS 122.[1] On March 22, 1960, the exempt status of plaintiff was again affirmed by the Internal Revenue Service (Exhibit 29).

In Underwriter's Laboratories v. Commissioner of Internal Revenue, 135 F.2d 371 (7th Cir. 1943), relied upon by defendant, the court made the categorical statement that, because a commercial testing laboratory is a regular business, an association of insurance companies which conducted such a business for profit is not entitled to an exemption as a business league. Contrary to defendant's assertion that the court decided whether to apply "the general rule or apply the exception," a careful reading of that opinion discloses that the court did not even consider the issue of whether or not the testing laboratory was an incidental purpose of the association. The association claimed exemption as a charity, as to which the court remarked at p. 373:

" * * * the testing service is [offered to manufacturers and not to association members themselves] who pay the ample fees that give the petitioner its large profits. As the Board observed: 'undoubtedly it could have established prices which would not have resulted in such substantial profits. Not having done so, it is reasonable to asssume that it intended to operate for profit.'

This does not sound like charity to us." Exemption as a charity was denied, and, with little discussion the court denied exemption as a business league, after taking judicial knowledge of the fact that commercial testing laboratories are frequently operated as a regular business for profit. Because the question of whether testing activities in fact were "incidental" to the association's main

---

1. "In pursuance to Department regulation, plaintiff, as sponsoring party, has paid all costs incurred by the U.S. Department of Commerce in printing the Commercial Standards CS 45 and CS 122. Plaintiff has also reprinted approximately 177,500 copies of CS 45–55, 35,400 copies of CS 122–56, 276,500 copies of CS 45–60 and 210,400 copies of CS 122–60. Such reprints were distributed principally to plywood mills, plywood distributors, mill salesmen, distributor salesmen, lumber dealers, builders and architects." (Admitted facts, Pretrial Order, p. 19).

purpose was not raised in or necessary to that decision, it is not controlling or even helpful in the present case where the question unanswered in *Underwriter's* is the essential issue.

Defendant relies upon Credit Manager's Ass'n of Northern and Central California v. Commissioner of Internal Revenue, 148 F.2d 41, 42 (9th Cir. 1945) for the proposition that either a "regular business" or a "particular service" is sufficient to deny exemption to a business league. Assuming the language of the court may be so construed, the case is readily distinguishable upon its facts because: (1) as the opinion recites, " * * [t]he Tax Court [in *Credit Manager's*] found that petitioner's *principal activity* during the taxable period was the operation of its Credit Interexchange Bureau." (Emphasis added.); (2) the Association furnished *individual* reports to particular subscribers at substantial fees; (3) this regular business accounted for more than half the total income of the Association which also conducted two other regular businesses; and (4) there was no public or industry-wide benefit that could be derived from the Association's principal activities. Also, prior to the *Underwriter's* case, the Seventh Circuit recognized that the absence of profit motivation was an important factor showing "regular business" activities of an exemption claimant to be merely incidental. See, Commissioner of Internal Revenue v. Chicago Graphic Arts Federation, 128 F.2d 424 (7th Cir. 1942). The stipulated facts in the present case show that no profits result from plaintiff's activities in quality control and profits are not the motivation for such activities. Plaintiff's income is derived solely from membership dues; there is no provision in plaintiff's by-laws for the distribution of income to members; and, there is no possibility that dues may be reduced because of profits.

The court finds no material change has occurred in the incidental character of plaintiff's quality control activities from its inception in 1936 to the present. Neither has there been any change in the statutory provisions governing plaintiff's tax exemption status since that time. Through quality control services, plaintiff itself has been largely responsible for the development of Commercial Standards under which plywood is accorded government approval and public acceptance as a building material. Such approval and acceptance is the principal purpose of plaintiff's quality control activities, the *sine qua non* of existence and growth of plywood as an industry, and indisputably of great value to the public.

Industry quality control requires that plywood manufactured by all producers be inspected and tested. The fact that industry quality control involves each of the three features relied upon by defendant does not change the fact that each of the features is merely incidental to plaintiff's main purpose to improve the industry by engaging in quality control activities, resulting in great benefit to the public. Similarly, the fact that plywood testing has recently been made available by commercial laboratories, since the Commercial Standards amendment now requires independent testing, does not demonstrate that continued performance of such services by plaintiff is more than incidental to its main purpose.

In Evanston-North Shore Board of Realtors v. United States, 320 F.2d 375, 162 Ct.Cl. 682 (1963) the court held that a multiple cross-reference listing system constituted the substantial activity of the Board and was of "most immediate" benefit to particular realtors individually. Because the fees charged were directly proportional to the benefits received by each realtor, the court found they were not "inherently group benefits." In the present case there is no showing that benefits received by an individual plywood manufacturer are directly proportional to the manufacturer's contribution of dues based upon production. Admittedly, plaintiff's individual members benefit by having the inspection and testing of their production conducted by their association, which itself established the Commercial Standards under which plywood is grademarked. Otherwise, some other commer-

cial laboratory would be utilized, which necessarily would lack the unique experience plaintiff has had in developing the plywood industry. However, no authority requires that *all* benefits of a trade association be *exclusively* devoted to the public or to the industry as a whole. As the court recognized in *Evanston,* supra, at p. 378:

> " 'it can hardly be supposed that individuals would often join organizations without the expectation of receiving some *personal* benefits therefrom.' " (Emphasis added.)

The court finds that the individual and personal benefits enjoyed by members of the Plywood Association because of its quality control services are inherently and most immediately group benefits in that quality control insures safe plywood, a prerequisite to its acceptance by the public and accounting for plywood manufacturing being a great industry. All benefits to individuals derived from such services of plaintiff clearly are incidental to the main purpose of, and reason for, plaintiff's activity in providing them. In Crooks v. Kansas City Dealers', supra, 37 F.2d at p. 85, fees received for supervision of hay transportation were held "merely incidental to the main purpose of the association; that honest weights, *honest inspection,* and fair dealing are essential to the maintenance of a reliable market." (Emphasis added.)

The court is satisfied that plaintiff's quality control activities do not justify denial of tax exempt status to plaintiff as a business league.

## PROMOTIONAL ACTIVITIES

Defendant contends plaintiff's promotional activities, standing alone, are advertising services for individual association members and the use of a substantial portion of plaintiff's income for the promotion of trademarks which can be used only by association members. Essentially, defendant urges that in the year 1961 a "shift in advertising emphasis" occurred which demonstrated plaintiff's promotional activities are not "entirely institutional in character."

Significant facts admitted in the pretrial order are: "It is and has been the practice of plaintiff in its trade literature and advertising to promote the acceptance of softwood plywood and the DFPA grademarks as symbols of quality plywood conforming to commercial standards. Also, in plaintiff's efforts to promote acceptance of plywood by building code authorities throughout the United States, it is and has been plaintiff's practice to recommend to such authorities that their building codes require plywood which conforms to commercial standards." (Pretrial Order, para. 24(b), p. 19). Under revisions adopted November 14, 1960, the symbols of the DFPA were no longer permitted to be published as an integral part of commercial standards.

No authority is cited for holding a business league claiming tax exemption must devote itself exclusively to "institutional" advertising; that is, to advertising which at no time mentions a grade trademark or brand name. In Washington State Apples, Inc. v. Commissioner, 46 B.T.A. 64 (1942), it was pointed out that the absence in advertising material of a brand name, or address of an individual producer, tended to show promotion "industrial" in character. However, neither the statute nor treasury regulation previously cited proscribes, *per se,* the use of a grade trademark in "industrial" advertising.

Assuming advertising use of the plywood association grade trademarks tends to negative plaintiff's qualification for tax exempt status, the "incidental" exception is applicable. Denial of tax exemption is not justified merely because trademarks, an incidental feature appearing in plaintiff's advertising, are of some direct benefit to plaintiff's individual members. It can reasonably be inferred from the evidence that use of trademarks in plaintiff's advertising produces, at least indirectly, benefits for the few plywood manufacturers who are not members of plaintiff association. Consideration of the entire record relating to plaintiff's promotional activities shows, and the court finds, that to the extent plain-

tiff's trademarks are used in its advertising, promotion of the trademarks is incidental to the main purpose of plaintiff's promotional activities which is to further more varied and extensive use and acceptance of plywood as a building material. Although plaintiff's promotional activities have greatly expanded with the growth of the plywood industry, a preponderance of the evidence negatives significant change in emphasis in plaintiff's promotional activities as asserted by defendant.

A comprehensive assortment of plaintiff's advertising materials is in evidence and includes TV program recordings. Taken as a whole these exhibits amply demonstrate that the reference to trademarks in plaintiff's advertising is of minor importance and incidental to the principal thrust of all of the advertising, i. e., a message dedicated to plaintiff's main purpose as stated in the previous paragraph.

In a brief introduction and a short conclusion to each of plaintiff's television programs, plaintiff's grade trademark is shown as a symbol of quality plywood and is presented without special emphasis or embellishment. The dominant and central purpose of the television programs is devoted entirely to demonstrating the competitive advantages of plywood as a building material: ease of construction, flexibility, beauty, etc.

In all of plaintiff's advertising, including television, none of plaintiff's individual members are mentioned. While such members undoubtedly benefit from the increased demand for plywood, no particular individual benefit or service is received by any particular member. (Cf. *Washington State Apples,* supra). Defendant does not attempt to demonstrate individual benefits to association members; rather, defendant relies upon the price differential between the plywood of members using plaintiff's trademarks and the plywood of those relatively few producers who as non-members cannot use the trademarks. No better demonstration of the industry-wide benefits attributable

to plaintiff's advertising can be presented than this price difference.

In 1961 plaintiff's members were responsible for 92.7% of the total volume of plywood produced. Competitors not using plaintiff's trademark sold their plywood at prices from $2.00 to $4.00 lower than plaintiff's members. The commercial advantage of the trademarks is obvious. It is equally apparent that the direct advantages derived from trademark promotion, except for a small fraction of total production, are realized by the industry generally. All consumers share in the advantages resulting from plaintiff's long-continued and extensive program promoting the use of quality plywood, in which program trademark recognition is incidental. Plaintiff's accomplishments in developing the acceptance of plywood as a quality building material over the years have produced success for the entire industry, irrespective of association membership.

The examples of plaintiff's literature in evidence further demonstrate the incidental nature of plaintiff's trademarks to its promotional activities. Except for rare instances, in which the trademarks appear by themselves for the purpose of explanation and demonstration as well as promotion, the trademarks are always presented in an incidental manner and in subordinate position. The primary theme of plaintiff's literature is to explain how and why plywood should be used in construction. Secondly, use of quality plywood is advocated. Finally, the trademark as a symbol of quality material is presented without special emphasis. No mention is ever made of any particular producer from whom such trademarked plywood is available.

█ All factors considered, it is found and held that plaintiff's promotional activities do not justify denial of its tax exempt status as a business league. From this ruling it follows plaintiff is entitled to judgment as prayed for. Consideration of the other issues involved in the case is not required and no decision thereon is made by the court.