**NATIONAL PRIME USERS GROUP, INC.**

v.

**UNITED STATES of America.**

Civ. No. B–85–5033.

United States District Court, D. Maryland.

Aug. 13, 1987.

---

Mary A. McReynolds, Barry A. Friedman, Washington, D.C., for plaintiff.

Breckinridge L. Willcox, U.S. Atty., Larry D. Adams, Asst. U.S. Atty., Baltimore, Md., Stuart M. Fischbein, Washington, D.C. for defendant.

WALTER E. BLACK, Jr., District Judge.

Plaintiff, National Prime Users Group, Inc. (hereinafter "NPUG"), commenced this action for the refund of taxes assessed against and collected for the fiscal years ending on August 31, 1981, 1982, and 1984, totalling $7,397.89, plus statutory interest and for declaratory judgment, on the basis that it now constitutes, and has since its incorporation, a business league exempt from federal taxation pursuant to Section 501(c)(6) of the Internal Revenue Code, 26 U.S.C. § 501(c)(6) (1987). The suit arises out of the Internal Revenue Service's denial by letter dated September 15, 1983, of NPUG's application for exemption from taxation under Section 501(c)(6), after finding that NPUG, by its activities, promotes a single name brand product, computers manufactured by Prime Computers, Inc., and serves the private interests of its members by performing particular services.

NPUG was incorporated under the laws of the State of Maryland in April, 1980. The purpose of the corporation as provided in the original articles of incorporation was "to engage in any lawful business and trade practices; to provide an organized method of communication among users of PRIME Computer, Inc. Equipment and to provide an organized method of communication between the users and the vendor; and to do anything permitted by the Corporations and Associations article of the Maryland Code, as amended from time to time." NPUG's Bylaws were consistent with the articles of incorporation in providing that "The National Prime Users Group, Inc. exists to provide an organized method of communication among users of PRIME Computer, Inc. equipment and between the user base and the vendor."

Membership in NPUG at the time of incorporation was limited to "an organization, institution, or individual that has purchased, leased, uses or has on order a computer manufactured by Prime Computer, Inc." Prime Computer, Inc. (hereinafter "Prime") is a manufacturer of minicomputers, having its headquarters in Natick, Massachusetts, supplying both hardware and software components to its customers, and currently is a vendor of six models of minicomputers.

NPUG's principal activities include the sponsoring of an annual conference and the publishing of a quarterly technical newspaper entitled "NPUG News." Consistent with its primary purpose, NPUG adopted a Policy on Commercialism in August, 1982,

which sets forth the conference procedures for the annual conference and gives special consideration to Prime. As provided in that document, the conference is sponsored by NPUG in order for Prime and users to interact on matters of mutual interest. Although sales presentations, promotional advertising and product demonstrations are "out of place in the Conference environment and are not permitted," the Policy on Commercialism sets forth the special consideration given Prime at the annual conference, which includes an exhibit of Prime products and services, staffed with Prime representatives, and Prime hospitality suites at which NPUG members are able to meet and confer with Prime representatives on an individual basis. Other vendors, however, are expressly excluded from such exhibits designed to expose their products and services, and are similarly prohibited from sponsoring hospitality suites.

Prior to submitting the application for exemption to the Internal Revenue Service, NPUG's articles of incorporation were amended on March 28, 1983, altering the stated purposes for which NPUG exists to read: "To organize and operate as a nonprofit business league that qualifies as an exempt organization from Federal income tax under section 501(c)(6) of the Internal Revenue Code by seeking to stimulate the development of, with free interchange of information pertaining to, systems and programming of electronic data processing equipment for the sharing of the common business interests of the members of this Corporation and their common business problems concerning the use of digital computers. The primary objective of this Corporation is to provide a forum for the exchange of information which will lead to a more efficient utilization of computers by its members and other interested users, thus improving the overall efficiency of the business operations of each." The purpose as stated in the Bylaws was likewise amended to provide that NPUG exists, "to provide an organized method of communication among users of computer equipment and between the user base and the vendor."

Thereafter, on April 25, 1983, NPUG submitted an application to the Internal Revenue Service on Form 1024 for recognition of exemption under Section 501(c)(6) of the Internal Revenue Code. The application was denied by letter dated September 15, 1983. The denial was confirmed by letter dated July 5, 1984, and NPUG thereafter remitted to the District Director of Internal Revenue, Baltimore, Maryland, tax returns and payments for fiscal years 1981, 1982, and 1984, totalling $7,397.89. A claim for the refund of these tax payments was then made by NPUG with the District Director, and by letter dated November 1, 1985, the Internal Revenue Service notified NPUG that the claims for refunds had been disallowed. The instant action ensued.

The issue presently before the Court arose on the parties' cross-motions for summary judgment for determination of whether NPUG is a "business league" entitled to exemption from federal income tax pursuant to Section 501(c)(6) of the Internal Revenue Code of 1954, 26 U.S.C. § 502.(c)(6).

The statute provides for the exemption from federal tax of: "Business leagues, chambers of commerce, real-estate boards, boards of trade, or professional football leagues (whether or not administering a pension fund for football players), not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual." Treas.Reg. § 1.501(c)(6)–1, 26 C.F.R. § 1.501(c)(6)–1 (1978) sets forth the necessary requirements to qualify as a tax exempt business league. It states that:

A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus, its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons.... A stock or commodity exchange is not a business league, a cham-

ber of commerce, or a board of trade within the meaning of section 501(c)(6) and is not exempt from tax.

The Supreme Court granted *certiorari* in *National Muffler Dealers Association, Inc. v. United States*, 440 U.S. 472, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979), to resolve the split in the circuits concerning whether the line of business requirement provided for in the Treasury Regulation and the Commissioner's interpretation of it "implements the congressional mandate in a reasonable manner." *Id.* at 476, 99 S.Ct. at 1307, citing *United States v. Cartwright*, 411 U.S. 546, 550, 93 S.Ct. 1713, 1716, 36 L.Ed.2d 528 (1973). After an extensive review of the exemption provided for in § 501(c)(6), including the origin and purpose of the statute, along with consideration of the history of Treas.Reg. § 1.501(c)(6)–1, the Court concluded that the regulation, and the Commissioner's interpretation of it, bears a fair relationship to the language of the statute, reflecting the views of those who advocated its enactment and the underlying purpose they sought to achieve. *National Muffler Dealers*, 440 U.S. at 484, 99 S.Ct. at 1310. In so holding, the Court endorsed the definition applied by the courts and the Commissioner interpreting the term "line of business" as used in the regulation, to mean either an entire industry, citing, *American Plywood Assn. v. United States*, 267 F.Supp. 830 (W.D.Wash.1967); *National Leather & Shoe Finders Assn. v. Commissioner*, 9 T.C. 121 (1947), or all components of an industry within a geographic area, citing, *Commissioner v. Chicago Graphic Arts Federation, Inc.*, 128 F.2d 424 (7th Cir.1942); *Crooks v. Kansas City Hay Dealers' Assn.*, 37 F.2d 83 (8th Cir.1929); *Washington State Apples, Inc. v. Commissioner*, 46 B.T.A. 64 (1942). *National Muffler Dealers*, 440 U.S. at 483, 99 S.Ct. at 1310.

The Court noted that exemption has been consistently denied by the Commissioner to business groups whose membership and purposes are narrower than those that meet the "line of business" test in that they fail to benefit either an entire industry or all components of an industry within a geographic area. Examples of those denied exemption for failure to meet the "line of business" test include those that bottle a single brand of soft drink, market a single brand of automobile, or have licenses to a single patented product. *National Muffler Dealers*, at 483, 99 S.Ct. at 1310.

In sum, the Court held that the "line of business" limitation is "well grounded in the origin of § 501(c)(6) and its enforcement over a long period of time." *Id.* at 488, 99 S.Ct. at 1312. Although infrequent, the Commissioner had consistently interpreted the regulation to exclude an organization like the one before the Court which was not industry-wide in that its membership was limited to muffler dealers franchised by Midas International Corporation, and its activities to the Midas muffler business. *Id.* at 482, 99 S.Ct. at 1309. Because the Association was unable to establish to the Court's satisfaction that either the regulation or the Commissioner's interpretation of it fails to "implement the congressional mandate in some reasonable manner," the claim for exemption pursuant to § 501(c)(6) was denied. *Id.* at 489, 99 S.Ct. at 1313.

Since the Supreme Court's decision in *National Muffler Dealers*, there has been a dearth of case law in the area of the business league exemption from federal income tax under § 501(c)(6). This is undoubtedly due to the Court's implicit determination that the regulation "implements the congressional mandate in some reasonable manner," along with the statement in that opinion that the Commissioner's infrequent, but consistent view of the regulation, "merits serious deference." *Id.* at 484, 99 S.Ct. at 1310.

This Court is not faced here with the difficult task of determining what is meant by a business league, as the Supreme Court has resolved the issue in favor of deferring to the definition provided in the regulation. Rather, the Court must apply the "line of business" requirement set forth in the regulation to the circumstances of National Prime Users Group in order to determine whether exemption from tax under § 502(c)(6) is merited. There being no

dispute as to the underlying facts, but only as to the interpretation of those facts, the Court finds that the status of NPUG can be determined on the cross-motions for summary judgment. A motion for summary judgment can only be granted under Rule 56 of the Federal Rules of Civil Procedure if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962).

In applying the "line of business" requirement, the Court is mindful of the general considerations which underlie it and has no difficulty in concluding, based on the record before it, that NPUG does not merit exemption. At the outset, the Court cannot overlook the name of the organization and the obvious implication that National Prime Users Group is an association organized for users of Prime products.

With respect first to the fiscal years ending on August 31, 1981, and 1982, for which plaintiff seeks a refund of taxes assessed and collected, the Court finds that the articles of incorporation and bylaws as originally enacted, under which NPUG operated during those years, conclusively establish that NPUG was an organization serving only segments of a line of business, those using Prime products. The purpose of NPUG as set forth in those corporate documents was to provide an organized method of communication among users of Prime equipment and between the users and the vendor. Membership in NPUG was limited to those organizations and individuals who had purchased, leased, ordered, or were presently using a computer manufactured by Prime. Consistent with these limitations, NPUG also operated under a Policy on Commercialism, which set forth the conference procedures for the annual conference, allowing for special consideration to Prime. Typically, sales presentations, promotional advertising, and product demonstrations were not permitted at the conference; however, under this Policy, an exhibit of Prime products and services was allowed, along with hospitality suites sponsored by Prime. Moreover, this policy statement indicates that Prime supplied travel funds and time for developers, engineers, service personnel and managers to attend the conference.

In an obvious tax-motivated step, NPUG's articles of incorporation and by-laws were amended in 1983, just prior to the submission of the application for exemption. While the amended purpose of the organization as set forth in these documents was to provide a forum for the exchange of information and communication among users of digital computers, NPUG's activities and membership were not similarly altered, but rather the organization continued to operate, in all respects, as it had under the original articles of incorporation. Indeed, the first sentence of the amended purpose for which NPUG exists begins, "To organize and operate as a nonprofit business league that qualifies as an exempt organization from Federal income tax under Section § 501(c)(6) of the Internal Revenue Code...." It is clear to this Court that the amendment was an attempt to come within the exemption from taxation provided for in § 501(c)(6), and did not in substance alter the purpose or activities of NPUG in any significant sense.

Despite the amendments to NPUG's announced purpose, the name of the organization remained the same, and there is no indication that NPUG recruited new members nor opened and expanded its membership to include non-Prime users, who were not already members. The activities of NPUG similarly remained unchanged; the organization continued to sponsor annual conferences and to publish a quarterly newsletter. There is no evidence that the substance of these activities was altered to conform with NPUG's amended corporate documents and the purpose as stated therein. Nor was NPUG's Policy on Commercialism amended or repealed. NPUG continued to devote a significant amount of its conference and newsletter agenda to subjects relating to Prime Computers. In fact, the 1983 Prime Users Conference in San Francisco, which followed the 1983 amendments, featured a presentation of "New Prime Products," a "Prime Management

Panel," with Prime's Vice-President for Systems Marketing, Director of Strategy, Vice-President for Customer Service, Vice-President for Domestic Sales, Vice-President for Marketing Programs, and Director of Software Development, luncheon speeches by Prime's Vice-President for Systems Marketing, and Vice-President for Customer Service, a "Prime Technical Panel," with Prime's Director of Technical Support, Systems Software Marketing Manager, Section Manager, Prime Information Software Development, Production Manager of Networks and Data Management Marketing, and Prime sponsored cocktail parties. In addition, various presentations were made during the Conference, the majority of which were led by Prime representatives. While some of the presentations were conducted by individuals with no apparent affiliation with Prime, they similarly did not have any association with other computer companies. In fact, Prime was the only computer company involved in the Conference activities. During registration for this Conference, members were able to visit the "Exhibit Hall," and the Court can only assume that Prime products and services were on display, as the Policy on Commercialism specifically allowed for such a Prime exhibit at the Conference site, while other vendors were prohibited from such marketing for their products.

NPUG concedes that the topics addressed in the newsletter and at the conference are of particular utility to Prime users, but argues that a substantial number of these topics apply equally to Prime and non-Prime computer systems. As with all learning experiences, the Court recognizes that some of the information supplied by NPUG could be used in some fashion in the operation of computer systems manufactured by other companies. However, it is obvious from Prime's extensive overall involvement in the 1983 NPUG Conference, to the exclusion of all other companies, that the Conference is used by Prime as an important marketing vehicle, which creates substantial good will for Prime. The existence of an organization whose activities focus upon the needs of Prime users, is indeed a useful sales tool in persuading potential customers to buy, lease, or rent a Prime computer, and Prime gains a competitive advantage over other computer manufacturers through such an organization. Clearly, NPUG's activities advance the interests of Prime and fail to bestow a benefit upon either an entire industry or all components of an industry within a geographic area as those terms have been interpreted by the Commissioner and the courts.

NPUG submits that its activities are directed to the improvement of the hundreds of lines of business represented by its membership. In essence, NPUG contends that the members consist of individuals trained in various aspects of the computer field, practicing as sole proprietors, partners, members of professional corporations, employees of corporations, unincorporated associations, governmental agencies, colleges, and universities, and thereby making up their own distinct line of business. In the alternative, NPUG submits that the Court should look to the organizations where the members are employed and not to the members themselves, as they represent diverse lines of business, and include entities such as the United States Coast Guard, United States Geological Society, Tennessee Valley Authority, Massachusetts Institute of Technology, General Foods, Price Waterhouse, Merrill Lynch, and Bath Iron Works, to name just a few.

In determining whether NPUG improves business conditions in one or more lines of business, as is necessary to qualify for exemption under 501(c)(6), the Court must look to all of the circumstances of NPUG, including the primary objective of the corporation, its activities, and its membership. By directing its activities to users of Prime Computers, NPUG improves business conditions in segments of the lines of business represented by its members. Only those select businesses within an industry represented by NPUG's members which use Prime products benefit through NPUG's existence. Moreover, the primary objective of NPUG, as is evident in its corporate documents, prior to amendment, its Policy on Commercialism which remains un-

changed since 1982, and the consistent focus of its activities, even after the amendments to the corporate documents, is to provide a method for the dissemination of information to and communication among users of Prime. Underlying all of this, of course, is the inherent benefit to Prime in marketing its products. Its activities provide a competitive advantage to Prime, at the expense of other computer manufacturers. No other computer company benefits, except incidentally, through the activities of NPUG.

Indeed, NPUG's membership, purposes and activities are virtually identical to an organization denied exemption by the Internal Revenue Service in Revenue Ruling 83–164. There the organization was formed to develop and disseminate information pertaining to the electronic data processing equipment manufactured by the M Corporation. The membership was made up of representatives of diversified businesses that owned, rented or leased computers manufactured by M. As with NPUG, membership was also open to representatives of businesses that did not use M Computers. Conferences constituted the primary activity of the organization, with members of M attending to distribute information relative to M's equipment. The service concluded that the organization's primary activity was to promote the common business interests of users of one particular brand of computers and, therefore, did not qualify for exemption from federal income tax as a business league under § 501(c)(6).

Plaintiff argues that this Ruling represents a "sharp break with all prior precedent interpreting the term 'line of business'" in that the Service did not consider the businesses of the organization's members for the purpose of determining whether the activities improved one or more lines of business. The Service did, however, consider this factor, but concluded, as this Court has, that only segments of the lines of business to which the members belonged were improved, those segments using computers manufactured by M.

A prior determination by the Service in Revenue Ruling 74–147, upon which plaintiff would have this Court rely, is distinguishable. There, the organization requesting advice was formed to stimulate the development of, with free interchange of information pertaining to, systems and programming of electronic data processing equipment. The membership included representatives of diversified businesses that owned, rented, or leased one or more digital computers, produced by various manufacturers. This organization, too, sponsored conferences at which problems relating to computer use were discussed. Manufacturers of computer equipment were invited to attend and disseminate information relative to their equipment at the conferences. The Service examined the common business interest of the members which was their common business problems concerning the use of digital computers, as well as the primary objective of the organization to provide a forum for the exchange of information which will lead to the more efficient utilization of computers by its members. The Service concluded that the organization qualified for exemption under § 501(c)(6). Unlike NPUG, the organization directed its activities to the users of computers made by diverse and competing manufacturers.

Based on all of the foregoing, the Court finds that NPUG has endeavored to serve solely the interests of Prime through NPUG's activities. The purpose of NPUG, as set forth in the original articles of incorporation and bylaws, the Policy on Commercialism which has not been amended or repealed, and as evidenced from the consistent activities of the organization since its inception, is to provide information to and communication among users of Prime equipment. The organization does not serve an entire industry or all components of an industry within a geographic area. The Court must, therefore, deny plaintiff's claim for a refund of taxes assessed and collected for the fiscal years ending on August 31, 1981, 1982, and 1984.

While plaintiff also sought a declaratory judgment under 28 U.S.C. § 2201, that it now constitutes, and has since its inception,

a business league exempt from taxation under § 501(c)(6) of the Internal Revenue Code, the issue was not pressed at oral argument. It is clear from the statute that this Court does not have the jurisdiction under the circumstances of this case to issue the declaratory judgment requested, as 28 U.S.C. § 2201 provides:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1954 or a proceeding under Section 505 or 1146 of title 11, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

It is clear from the statutory language "except with respect to federal taxes" that the Court could not enter a declaratory judgment in this action, even if it were inclined to do so. Because of the Court's determination that NPUG is not entitled to the refunds requested for the years at issue, as NPUG does not now, nor did it ever, constitute a business league exempt from taxation under § 501(c)(6), the request for declaratory judgment is moot.

Plaintiff's claims for refund of taxes paid and for declaratory judgment are denied. Summary judgment is entered in favor of defendant.

### ORDER AND JUDGMENT

Presently pending in this litigation is the Motion of Defendant, United States of America, for Summary Judgment (Paper 7), and the Motion of Plaintiff, National Prime Users Group, Inc., for Summary Judgment (Paper 8). The issues were fully briefed, and the Court had the benefit of oral argument presented on behalf of the parties at a hearing held on March 13, 1987.

In accordance with the Court's opinion and rulings rendered in a Memorandum of even date herewith, IT IS this *13th* day of August, 1987, by the United States District Court for the District of Maryland,

ORDERED and ADJUDGED:

(1) That Plaintiff's Motion for Summary Judgment (Paper 8) BE, and the same hereby IS, DENIED;

(2) That Defendant's Motion for Summary Judgment (Paper 7) BE, and the same hereby IS, GRANTED;

(3) That judgment BE, and the same hereby IS, ENTERED in favor of Defendant, United States of America, against Plaintiff, National Prime Users Group, Inc.; and

(4) That the Clerk shall mail copies of this Order and the accompanying Opinion forthwith to counsel of record.